Mark Owen BIGGS, Appellant

v.

Amy Sue BIGGS, now Nichols, Appellee.

No. 2008–CA–001219–ME.

Court of Appeals of Kentucky.

Dec. 4, 2009.

Susie H. Moore, Henderson, KY, for appellant.

William B. Norment, Jr., Henderson, KY, for appellee.

Before COMBS, Chief Judge; WINE, Judge; GRAVES,[1] Senior Judge.

*OPINION*

COMBS, Chief Judge.

Mark Biggs appeals the dismissal of his motion to modify custody by the Henderson Circuit Court. After our review, we vacate and remand.

1. Senior Judge John W. Graves sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

Mark Biggs (Mark) and Amy Nichols (Amy) divorced in 1999. At that time, their son, Jesse, was three years of age. The Henderson Circuit Court ordered joint custody with Amy designated as the primary care provider. In 2007, Amy, her new husband, and Jesse moved to Colorado. Mark was deployed to Afghanistan. Mark filed a motion in Henderson Circuit Court to prevent Amy from taking Jesse to Colorado. The court denied the motion because of Mark's deployment but advised him to file another motion once he was "available"—presumably meaning upon his return to Kentucky.

In 2008, Mark filed a motion to modify custody. Citing lack of jurisdiction, the trial court dismissed the motion in April 2008, finding that Kentucky was no longer Jesse's home state. Mark now appeals the trial court's denial of his motion to reconsider. After examining the record and the applicable law, we are persuaded that the trial court erred in its order declining to exercise jurisdiction in this matter.

Kentucky adopted the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) in 2004. Kentucky Revised Statutes (KRS) 403.800, *et seq.* The UC-CJEA was intended to bring states' laws into compliance with the federal Parental Kidnapping Prevention Act (PKPA). UC-CJEA Prefatory Note (1999).

■ UCCJEA directs that an initial custody determination should be made by a court in the child's home state—defined as the state in which the child has resided for six months. KRS 403.800(7). In this case, neither party disputes that the Henderson Circuit Court properly made the initial custody determination under KRS 403.822. Therefore, the issue before us is whether it properly declined to exercise continuing jurisdiction in modification matters. Whether a trial court acts within its jurisdiction is a question of law; there-

fore, our review is *de novo.* *Grange Mut. Ins. Co. v. Trude,* 151 S.W.3d 803, 810 (Ky.2004).

The trial court relied on KRS 403.824(1), which provides that the state making an initial custody determination retains jurisdiction unless:

> (a) A court of this state determines that neither the child, nor the child and one (1) parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships[.]

"Significant connection" is explained by the following comment to UCCJEA § 202:

> [E]ven if the child has acquired a new home State, the original decree State retains exclusive, continuing jurisdiction ... If the relationship between the child and the person remaining in the State ... becomes so attenuated that the court could no longer find significant connections and substantial evidence, jurisdiction would no longer exist.

As Kentucky law is sparse in construing our counterpart of the UCCJEA, we have looked to sister states for guidance. Michigan has also adopted the UCCJEA, and its Court of Appeals recently found that a significant connection exists if "one parent resides in the state and exercises at least some parenting time in the state." *White v. Harrison–White,* 280 Mich.App. 383, 760 N.W.2d 691, 697 (2008). The Court of Appeals of Tennessee has explained that under the principles of the PKPA and the UCCJEA, "continuing jurisdiction trump[s] 'home state' jurisdiction." *Staats v. McKinnon,* 206 S.W.3d 532, 546 (Tenn. Ct.App.2006) (*quoted by Wallace v. Wallace,* 224 S.W.3d 587, 589–90 (Ky.App. 2007)).

Our Supreme Court has recently held that a new state may not exercise jurisdiction for purposes of custody unless a Kentucky court first determines that the new state would be a more convenient forum according to the factors listed in KRS 403.834. *Mauldin v. Bearden*, 293 S.W.3d 392, 401 (Ky.2009).

 In the case before us, the trial court's order observed that Jesse attends school and that he participates in extracurricular activities in Colorado. Additionally, it found that "neither the child, nor the child and one (1) parent, have significant connection with [Kentucky] and substantial evidence is no longer available in [Kentucky] concerning the child's care, protection, training and personal relationships." However, it did not apply the factors mandated by KRS 403.834(2):

(a) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

(b) The length of time the child has resided outside this state;

(c) The distance between the court in this state and the court in the state that would assume jurisdiction;

(d) The relative financial circumstances of the parties;

(e) Any agreement of the parties as to which state should assume jurisdiction;

(f) The nature and location of the evidence required to resolve the pending litigation, including testimony of the child;

(g) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and

(h) The familiarity of the court of each state with the facts and issues in the pending litigation.

KRS 403.834(3) also instructs that if a trial court has declined to exercise jurisdiction, it must "stay the proceedings upon condition that a child custody proceeding be promptly commenced in another designated state." Thus, a child is not left without the continuity of the protective oversight of a court by slipping through the cracks of disputed jurisdictions. The record does not indicate that the trial court complied with this directive to assure continuity of a proceeding initiated in Colorado.

We conclude that the trial court erred when it did not follow the analysis and procedures mandated by the UCCJEA. Again, authority is sparse, and there is no caselaw construing the statute to provide guidance for trial courts navigating this relatively new and uncharted course. Although Kentucky's caselaw for the UCCJEA is still developing, other jurisdictions that have adopted the UCCJEA consistently require their courts to apply rather meticulously the factors in the statutes that correspond to KRS 403.834(2). *See Krebs v. Krebs*, 183 Md. App. 102, 960 A.2d 637 (Md.Ct. Spec.App.2008); *Meyeres v. Meyeres*, 196 P.3d 604 (Utah Ct.App.2008); *In re Adoption of Baby Boy M.*, 40 Kan.App.2d 551, 193 P.3d 520 (2008); *Malissa C. v. Matthew Wayne H.*, 145 N.M. 22, 193 P.3d 569 (N.M.Ct.App.2008); *Ramsey v. Ramsey*, 995 So.2d 881 (Ala.Civ.App.2008).

 Additionally, the trial court erred in its determination that neither Jesse nor one of his parents had significant connections to Kentucky. Though Jesse has resided in Colorado for one year, it is not necessary for a child to reside in the Commonwealth in order for Kentucky to retain jurisdiction. *Goff v. Goff*, 172 S.W.3d 352, 358 (Ky.2005). While Jesse has been in Colorado, his father remained a Kentucky resident. The record reveals that Jesse had lengthy visits with Mark in Kentucky

during that year. Jesse's younger half-sister, grandparents, and other relatives also reside in Kentucky.

In its determination of whether it retains jurisdiction, a trial court is required to consider what—if any—other courts might be appropriate. KRS 403.834(2)(g) & (h). In this case, Jesse's mother was preparing to move him from Colorado to Indiana. The record shows that the trial court acknowledged that its decision had caused Jesse to be in a state of limbo, an inevitable but regrettable result of life in today's mobile society bearing the obvious danger of repetition. This limbo-like state is the very consequence that the UCCJEA has sought to eliminate. *See* Melinda H. Eitzen et al., *Annual Survey of Texas Law Articles, Family Law: Parent and Child,* 56 SMU L.Rev. 1707 (2003); Julie A. Morley, *A Silver Lining in Domestic Turmoil: A Call for Massachusetts to Adopt the UCCJEA's Emergency Jurisdiction Provision,* 43 New Eng. L.Rev. 135 (2008).

In summary, the trial court did not apply the necessary statutory factors and erred in its finding that neither Jesse nor Mark has significant connections with the state of Kentucky. Therefore, we vacate the order of the Henderson Circuit Court and remand for further proceedings consistent with this opinion.

ALL CONCUR.