Tina Marie CURRY (Now Njuguna), Appellant

v.

Brian Patrick CURRY, Appellee.

No. 2013–CA–001266–ME.

Court of Appeals of Kentucky.

April 25, 2014.

Tina Marie Njuguna, Louisville, KY, pro se.

Before JONES, LAMBERT, and STUMBO, Judges.

## OPINION

JONES, Judge:

Tina Curry, now Njuguna, appeals an order of the Bullitt Circuit Court dismissing her motion for modification of a child custody order for lack of jurisdiction. For the reasons more fully explained below, we vacate and remand.

### I.

Tina Njuguna and Brian Curry divorced in 2000. At that time, the Bullitt Circuit Court entered an order granting them joint legal custody of their two minor daughters. It designated Njuguna as the primary residential custodian and awarded Curry visitation.

Curry subsequently moved to West Virginia with the children. In 2005, he filed a motion with the Bullitt Circuit Court seeking to modify the prior custody order.

The Bullitt Circuit Court granted the motion and entered an order designating Curry as the primary residential custodian and awarding Njuguna visitation. The parties retained joint legal custody of the children.

During the following years, the children regularly visited Njuguna in Kentucky. They also maintained relationships with their maternal half-brothers and other maternal family members.

On January 26, 2013, Curry was arrested at his home in West Virginia, where he resided with the two daughters, his new wife, and her children, following an incident of domestic violence involving the oldest daughter. Allegedly, while in a drunken state, Curry punched the oldest daughter in the face. Following this incident, an emergency protective order was entered by a West Virginia Court.[1]

Curry's wife notified Njuguna the following day about the incident. Curry's wife told Njuguna that the children were safe and were residing with her sister. After discussing the matter, the two women apparently then decided that it would be best for the children to finish out the school year in West Virginia since the oldest child was scheduled to graduate from high school in May.

In May 2013, Njuguna visited West Virginia for the oldest child's graduation ceremony. During her visit, Curry's wife informed Njuguna that she should take the younger child back home to Kentucky when she left. Njuguna did so and the child has resided with her in Kentucky since that time.

On May 5, 2013, Njuguna filed a *pro se* motion in the Bullitt Circuit Court asking

---

1. On February 11, 2013, a Domestic Violence Order was entered against Curry. It remained in place until August of 2013. Njuguna indicates that neither daughter has been in contact with Curry since that date and that criminal proceedings have been commenced against Curry.

for temporary sole custody of the minor child; Curry did not respond.[2] Ultimately, the trial court refused to exercise jurisdiction because the child had been a resident of West Virginia for over six months prior to the initiation of the action. Njuguna filed a motion to reconsider, but the trial court declined to vacate its order and set forth the following findings:

> The child has been a resident of West Virginia since 2005 and has been in Kentucky since May 29, 2013. The child has been absent from the state for more than six months. [Njuguna] is a resident of Jefferson County. There has been no significant contact with Bullitt County for years.

This appeal followed.

On appeal, Njuguna asserts that trial court erred by declining to exercise jurisdiction because her younger daughter had maintained a substantial connection with Kentucky while living in West Virginia and, as a result, the trial court had continuing exclusive jurisdiction pursuant to Kentucky Revised Statutes (KRS) 403.824(1). Moreover, Njuguna alleges the trial court erred by considering the connection to Bullitt County rather than the state as a whole. In the alternative, Njuguna argues that the trial court had emergency jurisdiction pursuant to KRS 403.828(1) as a result of Curry's violence towards the oldest child.

## II.

Curry did not file a brief as part of this appeal. In such a case, generally, pursuant to Kentucky Rule of Civil Procedure (CR) 76.12(8), we may accept the opposing party's statement of the facts and issues as correct, or treat the failure to file a brief as a confession of error. However, in an appeal involving child custody, such sanctions are inappropriate. *Galloway v. Pruitt*, 469 S.W.2d 556, 557 (Ky.1971). Therefore, we will address the merits of this appeal.

The primary issue before us on appeal is whether the trial court properly declined to exercise continuing exclusive jurisdiction in this matter. "Whether a trial court acts within its jurisdiction is a question of law; therefore, our review is *de novo.*" *Biggs v. Biggs*, 301 S.W.3d 32, 33 (2009).

## III.

Kentucky adopted the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) in 2004. *Wallace v. Wallace*, 224 S.W.3d 587 (Ky.App.2007). Under the UCCJEA, a state making the initial custody determination retains "exclusive, continuing jurisdiction over the determination" until such time as:

> [a] court of this state determines that neither the child, nor the child and one (1) parent, nor the child and person acting as a parent have significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships[.]

KRS 403.824(1)(a). "[T]he state having original jurisdiction maintains exclusive continuing jurisdiction though the child has acquired a new home state if the general requirement of the substantial connection jurisdictional provisions are met." *Wallace*, 224 S.W.3d at 590.

In this case, there is no dispute that Kentucky had original jurisdiction over the

---

**2.** The oldest child had since obtained the age of majority and was not included as part of the motion.

custody determination, leaving only the question of substantial connection. The substantial connection provisions allow the trial court to retain exclusive continuing jurisdiction until "... substantial evidence is no longer available in [Kentucky] concerning the child's care, protection, training, and personal relationships[.]" KRS 403.824(1)(a).

Moreover, in *Biggs, supra*, a panel of this Court concluded that a trial court's conclusion that a child no longer had a substantial connection to Kentucky, without consideration of KRS 403.834, was in error. *Biggs*, 301 S.W.3d at 34. Specifically, the *Biggs* Court explained that had the trial court wished to decline jurisdiction because it was an inconvenient forum, the trial court should have considered the factors set forth in KRS 403.834(2) to determine if it would be appropriate for a court in another state to exercise jurisdiction. *Id.*[3] After doing so, if the trial court determines that jurisdiction in another state is proper, it must then comply with KRS 403.834(3) and "stay the proceedings upon condition that a child custody proceeding be promptly commenced in another jurisdiction."

Here, we find no evidence the trial court followed the procedures outlined in *Biggs* by considering the KRS 403.834(2) factors when it declined to exercise jurisdiction. In its June 17, 2013, order, the trial court declined continuing jurisdiction because the child had been a resident of West Virginia since 2005 and had only resided in Kentucky since May 29, 2013, and because Curry and the child now resided in Jefferson County, not Bullitt County.

■ First, residency of the child in Kentucky is not a requirement for a court to exercise continuing jurisdiction under the UCCJEA. *Biggs*, 301 S.W.3d at 34 (citing *Goff v. Goff*, 172 S.W.3d 352, 358 (Ky. 2005)). As noted above, the central inquiry is whether the child has maintained a substantial connection with Kentucky. *See Biggs*, 301 S.W.3d at 33–34 (holding that child's visits to Kentucky and the location of the child's relative in the state constituted a substantial connection).[4]

Additionally, the trial court improperly considered the county of residence in assessing whether it had jurisdiction under the UCCJEA. The UCCJEA is concerned with a child's substantial connection to the

---

**3.** KRS 403.834(2): Before determining whether it is an inconvenient forum, a court of this state shall consider whether it is appropriate for a court [of] another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including:
(a) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;
(b) The length of time the child has resided outside this state;
(c) The distance between the court in this state and the court in the state that would assume jurisdiction;
(d) The relative financial circumstance of the parties as to which state should assume jurisdiction;

(e) Any agreement of the parties as to which state should assume jurisdiction;
(f) The nature and location of the evidence required to resolve the pending litigation, including testimony of the child;
(g) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and
(h) The familiarity of the court of each state with the facts and issues in the pending litigation.

**4.** Our review of the facts offered by Njuguna reveals that it is likely the younger daughter retained substantial connections to Kentucky via regular visits with Njuguna, her custodial parent, her half-brothers, and her maternal relatives. Further, it is significant to note that the child currently resides in Kentucky, and is available to testify in Kentucky.

state at issue, not where the child resides within the state. KRS 403.824(1) (requiring that there be a "significant connection with this state"). The question of which county, within the state, is the most appropriate one to entertain a petition to modify custody is one of venue, not jurisdiction. *See Wallace,* 224 S.W.3d at 591. "While the concept of venue is important, it does not reach the fundamental level of jurisdiction, a concept whereby the authority of the court to act is at issue." *Fritsch v. Caudill,* 146 S.W.3d 926, 927 (Ky.2004).

Certainly, it was the trial court's prerogative to determine that Jefferson County was a more appropriate venue than Bullitt County. *Williams v. Williams,* 611 S.W.2d 807 (Ky.App.1981). However, this fact did not affect the court's jurisdiction over the claim. *See Fritsch,* 146 S.W.3d at 927. Moreover, pursuant to KRS 452.105, "[i]n civil actions, when the judge of the court in which the case was filed determines that the court lacks venue to try the

case due to an improper venue, the judge, upon motion of a party, shall transfer the case to the court with the proper venue." As such, it was improper for the trial court to dismiss the claim without affording Njuguna the opportunity to move to transfer the claim to Jefferson County.

We find the trial court's failure to consider and properly apply the necessary statutory factors as codified in *Biggs* was in error. Therefore, for the foregoing reasons, the decision of the Bullitt Circuit Court is vacated and the matter remanded for further proceedings consistent with this opinion.[5]

ALL CONCUR.

---

5. Because we reverse the trial court for a determination of whether the necessary factors for a significant connection exists, and whether Kentucky maintained continuing jurisdiction under KRS 403.824(1)(a), we find it is unnecessary for us to reach the question of temporary emergency jurisdiction.