RENDERED:  AUGUST 28, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-001079-ME

ALEXANDRA LAWSON                      APPELLANT


|  | APPEAL FROM CAMPBELL CIRCUIT COURT |
|---|---|
| v. | HONORABLE RICHARD A. WOESTE, JUDGE |
|  | ACTION NO. 14-CI-00572 |


JEREMY VILLARREAL                        APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  MAZE, TAYLOR, AND K. THOMPSON, JUDGES.

MAZE, JUDGE:  Appellant, Alexandra Lawson ("Mother"), appeals the Campbell Circuit Court, Family Division's post-decree order changing the primary residence of her two children from Mississippi and living with her, to Kentucky and living with their father, Appellee, Jeremy Villarreal ("Father").  For the following reasons, we affirm.

## BACKGROUND

Mother and Father have two children together: daughter, S.J.V. (born 2006) and son, S.B.V. (born 2008). Mother and Father divorced in Indiana in 2010. At the time of their divorce, Mother and Father had joint custody of the children with Mother being awarded primary residential custody.

During the pendency of the Indiana divorce action, Mother anticipated a move to Kentucky. The parties subsequently agreed Mother could move with the children to Kentucky.

After the divorce, Mother married her current husband, Kenny Lawson, and they have two children together. Father married his current wife, Kari Villarreal, and they have one child together.

After Mother moved to Kentucky, Father did not want to be a "weekend dad" and began the process of moving to Kentucky. He spent two to three years trying to sell his Indianapolis home and securing a transfer with his employer to Kentucky. In addition, his current wife had to find a job in the Kentucky/Greater Cincinnati area as well. After doing this and accomplishing a move to Kentucky, Mother sought to relocate the children to Mississippi because Mr. Lawson received a promotion transferring him to Mississippi. Apparently, Mother knew this move was possible for several years. However, when the

promotion occurred, Mother unilaterally took the children and moved to Mississippi.

Father filed a motion in Indiana, where the initial decree was entered, objecting to the relocation of the children to Mississippi. The Indiana court ordered the children back to Kentucky. The Indiana court also stated it was no longer a proper forum because the parties no longer lived in Indiana.

By agreement of the parties, the Indiana judgment was registered in Campbell Circuit Court in Kentucky. Thereafter, the parties litigated the relocation issue in Kentucky. A trial was held, resulting in a July 31, 2015 order granting Mother's motion to relocate. The trial court noted it was "a difficult decision," as both parents were more than capable of caring for their children. However, Mother had been a full-time caregiver to the children and maternal grandmother was going to accompany the children to their new home in Mississippi, so they would have another relative caregiver. In its order, the trial court warned Mother about the importance of communicating with Father. "It is hoped the court's reliance on (Mother's) understanding of the nature of joint custody is not misplaced." The parties ultimately reached an agreement on a parenting schedule where Father received the children for one long weekend per month, a majority of the summer, and some holidays in Kentucky.

Until 2018, the parties' parenting arrangement seemed to work. However, in June 2018, Father filed an emergency motion for the children to relocate back to Kentucky and to be named their primary residential custodian. His motion outlined how Mother failed to send more than seven days of S.B.V.'s attention-deficit hyperactivity disorder (ADHD) medication to Father for the children's summer 2017 visit in Kentucky because Mother read prolonged use of the medication may stunt a child's growth by up to an inch; how Mother failed to adequately discuss the decision for S.B.V. to repeat fourth grade, even though the child received A/B grades, because Mother wanted S.B.V. (born in February) held back to the upper side of his age group; and other general co-parenting complaints, like enrolling S.B.V. in three basketball camps during his summer time with Father in Kentucky. Mother objected, and a trial was scheduled.

A few weeks before trial was to begin, Mother filed a motion for the trial court to decline jurisdiction, claiming Kentucky was an inconvenient forum, and to dismiss the case. The trial court denied that motion and retained jurisdiction.

Trial began on October 26, 2018, and resumed on March 29, 2019. At the trial, Father testified why he wished the children to be relocated back to Kentucky, while Mother testified why she wished to remain primary residential custodian in Mississippi. The trial court also heard from four witnesses by

-4-

deposition, including S.B.V.'s dyslexia therapist, the children's pediatrician, and two of the children's teachers.

On May 28, 2019, the trial court granted Father's motion. The trial court found that Mother acted in bad faith and in "somewhat of a deceptive manner" in dealing with the son's educational circumstances. While the parents exchanged emails where the son's education was mentioned, Mother did not inform Father of actual plans to hold S.B.V. back in fourth grade. The trial court also found Mother acted in "an arbitrary and strategic manner by not initially sending S.B.V.'s ADHD mediation in an attempt to unilaterally enforce holidays." In discussing the history of the case and the trial court's 2015 decision to allow Mother to relocate with the children to Mississippi, the trial court referenced Dr. Jean Deters, the relocation expert who submitted a report for the 2015 relocation hearing. Although Dr. Deters did not testify during the relocation trial regarding the present issues, the trial court quoted from her report, which opined that Father was "the better option relative to residential parenting" because Mother did not appreciate Father's role as a parent. Thus, the trial court relied upon Dr. Deters' 2015 prediction, coupled with Mother's unilateral actions, to conclude Father should be awarded primary residential custody.

After this order was entered, Mother filed a motion to alter, amend, or vacate, as well as a motion for additional findings of fact. On June 28, 2019, the

trial court amended its judgment but did not alter its decision to grant Father's motion. The amended judgment made additional findings of fact and conclusions of law regarding retaining jurisdiction, as well as its decision to relocate the children back to Kentucky.

This appeal followed. Along with her appeal, Mother filed a motion for emergency relief, as well as a petition for a writ, to stay enforcement of the order requiring the children to be relocated from Mississippi to Kentucky. A panel of this Court denied Mother's motion for intermediate relief, as well as her writ.[1] We now address her appeal.

## ANALYSIS

**1. The trial court did not err in retaining subject matter jurisdiction.**

Mother argues the trial court lacked subject matter jurisdiction, pursuant to Kentucky Revised Statutes (KRS) 403.824, to determine the motion to relocate and for primary custody. She claims the children's maximum contacts were in Mississippi when Father filed his motion for their relocation to Kentucky, so the Kentucky court did not have jurisdiction to modify custody. She cites cases from other states to argue that both a significant connection *and* substantial evidence are required for modification of subject matter jurisdiction under the

---

[1] Mother appealed the order denying her petition for a writ to the Kentucky Supreme Court. *See* No. 2019-CA-001055-OA, *aff'd* (No. 2019-SC-000670-MR, Ky. Jul. 9, 2020).

-6-

Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA).[2]  Because

substantial evidence was in Mississippi, she argues Kentucky did not have subject

matter jurisdiction.

In response, Father claims the trial court properly retained jurisdiction

of this matter because he and the children have a significant connection to

Kentucky, which permits Kentucky to retain jurisdiction over the child custody

determination pursuant to KRS 403.824(1)(a).  In addition, Father argues this issue

has already been resolved by a panel of this Court in its orders denying Mother's

motion for intermediate relief and her petition for a writ of prohibition.

Whether a trial court acts within its jurisdiction is a question of law.

*Biggs v. Biggs*, 301 S.W.3d 32, 33 (Ky. App. 2009).  Consequently, our review of

this issue is *de novo.  Id.*  In Kentucky, jurisdiction disputes regarding child

custody are governed by the provisions of the UCCJEA.  Kentucky adopted the

UCCJEA in 2004 to avoid "jurisdictional competition and conflict with other

states" in child custody matters.  *Wallace v. Wallace*, 224 S.W.3d 587, 589 (Ky.

App. 2007).

Pursuant to the UCCJEA and KRS 403.824, a court that has made a

child custody determination has exclusive, continuing jurisdiction over the

determination until:

---

[2] This Act is contained in KRS 403.800 to KRS 403.880.

A court of this state determines that neither the child, nor the child and one (1) parent, . . . have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships[.]

KRS 403.824(1)(a). Thus, Kentucky retains jurisdiction *until* the child no longer has a significant connection to the state and substantial evidence is no longer available in the state.

Contrary to Mother's argument, Kentucky only loses continuing, exclusive jurisdiction when the court finds the child and parent no longer have a significant connection to this state and substantial evidence is elsewhere. The plain language of KRS 403.824 refutes Mother's interpretation. This is also supported by Kentucky case law. *See Addison v. Addison*, 463 S.W.3d 755 (Ky. 2015); *Biggs*, 301 S.W.3d 32; *Williams v. Frymire*, 377 S.W.3d 579 (Ky. App. 2012).

The trial court found the children and Father maintained significant connection with Kentucky by the frequent parenting time that occurs here. Mother did not dispute these visits occurred. Accordingly, the trial court did not err by exercising exclusive, continuing subject matter jurisdiction of the child custody determination pursuant to KRS 403.824.

**2. The trial court did not err in applying the statutory factors of KRS 403.834 to Mother's inconvenient forum motion.**

In addition to her subject matter jurisdiction argument, Mother argues the trial court should have declined jurisdiction because it was an inconvenient

forum, pursuant to KRS 403.834.  Specifically, she claims the trial court gave too much weight to the financial circumstances of the parties and its familiarity with the parties and not enough weight to the nature and location of the evidence required to resolve Father's motion to relocate the children and for primary custody.

In response, Father argues that, although KRS 403.834 provides a non-exhaustive list of factors for the trial court to consider upon a motion to transfer the matter to another state, the trial court must only consider the relevant factors.  He claims the trial court did this and, thus, did not abuse its discretion in determining its familiarity with the facts and issues weighed in favor of its retaining jurisdiction.

Pursuant to KRS 403.834, a court may decline to exercise its jurisdiction at any time if it determines "it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum."  KRS 403.834(1).  Before determining whether it is an inconvenient forum, the court must consider whether it is appropriate for a court of another state to exercise jurisdiction.  KRS 403.834(2).  To that end, the court is required to consider "all relevant factors," including the following:

> (a) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

(b) The length of time the child has resided outside this state;

(c) The distance between the court in this state and the court in the state that would assume jurisdiction;

(d) The relative financial circumstances of the parties;

(e) Any agreement of the parties as to which state should assume jurisdiction;

(f) The nature and location of the evidence required to resolve the pending litigation, including testimony of the child;

(g) The ability of the court of each state to decide the issue expeditiously and the procedure necessary to present the evidence; and

(h) The familiarity of the court of each state with the facts and issues in the pending litigation.

KRS 403.834(2).

Here, the trial court's order reflects its careful consideration of the relevant factors. The trial court held it was "well familiar" with the case given the protracted litigation in 2015 for the move to Mississippi and the litigation relating to Father's motion to relocate the children back to Kentucky. As illustration, the trial court noted the parties had accumulated three volumes of pleadings in the clerk's record. While the trial court acknowledged that most of the evidence regarding the children's school, health care, and social activities was in Mississippi, it noted Mother presented testimony by deposition, without objection,

-10-

and was not prejudiced by conducting the case in Kentucky. Furthermore, the trial court held that, because no action was ever filed in Mississippi, it had no opportunity to discuss each state's ability to expeditiously hear evidence. So, it could not be certain Mississippi would even assume jurisdiction if an action had been filed there. Thus, we are not persuaded by Mother's argument that the trial court did not properly weigh the factors set forth in KRS 403.834.

In addition, we find Mother's argument that the trial court had no familiarity with the underlying dispute because the parties had not been before the trial court in almost four years to be disingenuous. Family court judges become familiar with the families that appear before them and with their disputes. That is part of the "one judge-one family" policy underlying the creation of Kentucky's family court system, which was "designed to reduce stress for families and promote the efficient delivery of services to those families whose disputes involve them in the court system." Louise E. Graham & James E. Keller, *Divorce Practice – Family Court*, 15 KY. PRAC. DOMESTIC RELATIONS L. § 8:27 (3d ed. 2008) (footnote omitted); *see also* KY. CONST. § 112(6); KRS 23A.100. Here, based on a review of the record, the trial court was clearly familiar with the parties and the history of the case leading up to the 2018 litigation.

The trial court considered the relevant factors when it retained jurisdiction of this case. Trying the case was inconvenient for both parties, but the

trial court thought it better to try the case in Kentucky than "begin the case anew in Mississippi." We agree.

**3. The trial court did not abuse its discretion in awarding primary residential custody to Father.**

Mother claims Father did not prove that it was in the best interest of the children to primarily reside with him in Kentucky. Specifically, she argues the trial court's judgment was unreasonable because the children were doing well in Mississippi and simply because she did not send enough ADHD medication for S.B.V. and did not adequately inform Father of her intention to have S.B.V. repeat fourth grade is not reason enough to relocate the children back to Kentucky. Moreover, Mother claims she eventually sent more ADHD medication for S.B.V. and S.B.V. was ultimately not held back in fourth grade, so Father's complaints were rectified.

In response, Father argues the trial court made extensive findings in this case and, therefore, did not act arbitrarily in changing him to the primary residential custodian. He claims Mother's unilateral conduct, like not providing enough ADHD medication and intending to hold S.B.V. back in fourth grade, was likely to persist if she remained primary residential custodian, whereas he would meaningfully co-parent with Mother.

When a parent seeks to modify timesharing and relocate the child, such a motion is controlled by KRS 403.320(3). *Pennington v. Marcum*, 266

-12-

S.W.3d 759, 768 (Ky. 2008). That statute provides that a trial court "may modify an order granting or denying [timesharing] whenever modification would serve the best interests of the child[.]" KRS 403.320(3); *see also* KRS 403.270(2) (identifying factors to evaluate the child's best interest). Generally, the decision to modify timesharing is reserved to the sound discretion of the trial court. *Williams*, 377 S.W.3d at 589. On appellate review, we will not disturb the trial court's ruling absent an abuse of that discretion. *Id.*

In this case, the trial court issued a lengthy order setting forth its findings of fact and conclusions of law, followed by a supplemental order with additional findings of fact and conclusions of law determining that the children should relocate back to Kentucky. The trial court concluded that it would be in the children's best interest to be with Father, as he will respect the rights of Mother to have information and input with respect to the substantive issues affecting the children. The trial court also relied on the children's guardian *ad litem* (GAL), who reported that, although the children had not expressed a preference for whom they wanted to be their primary residential custodian, the GAL requested Father be the primary residential custodian because Mother had not made good decisions regarding S.B.V.'s education, and the proposed school S.B.V. would attend in Kentucky would be better at accommodating S.B.V.'s educational needs. In sum, the trial court correctly applied the best interest standard and, while Mother

obviously disagrees with its findings, this Court cannot depart from them unless they are clearly erroneous or the trial court abused its discretion in applying the law.

## 4. The trial court did not commit palpable error by relying upon expert witness Dr. Jean Deters.

For her final argument, Mother claims the trial court committed palpable error when it relied on the opinion of expert witness Dr. Jean Deters, who did not testify during the 2018-19 trial. Mother admits this error was not preserved for appellate review and seeks review under the palpable error standard. Mother cites *Johnson v. Commonwealth*, 12 S.W.3d 258, 263 (Ky. 1999), for the proposition that evidence not introduced into the record is not available for the trial court's consideration.

In response, Father claims it was not an error that resulted in "manifest injustice" for the trial court to remember or review Dr. Deters' report for its decision to relocate the children back to Kentucky. He argues this case is a family court matter, not a criminal case like *Johnson*, *supra*, so the trial court had the entire record at its disposal, including Dr. Deters' report.

Because Mother requested a review for palpable error, we will review for manifest injustice only. *See* Kentucky Rules of Civil Procedure (CR) 61.02; *Elwell v. Stone*, 799 S.W.2d 46, 48 (Ky. App. 1990). "[T]he required showing is probability of a different result or error so fundamental as to threaten a [party's]

-14-

entitlement to due process of law." *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006).

In the 2015 hearing on Mother's motion to relocate the children to Mississippi, Dr. Deters provided an expert report, which the parties stipulated could be admitted into evidence without calling Dr. Deters as a witness. Apparently, Dr. Deters opined that the parties had poor communication and she was concerned that Mother's feelings of entitlement could interfere with the spirit of joint custody. She further opined that Father was more amenable to fully communicating and cooperating in a joint custody setting.

In its May 28, 2019 order, the trial court quoted from Dr. Deters' report and, thus, this does appear to be evidence relied upon in the trial court's determination. Based on a review of the record, however, this evidence appears to be only one part of the history of this case and did not form the sole basis for the trial court's decision. The trial court heard lengthy testimony from Father and Mother, and several depositions and exhibits were entered into evidence for the trial court's consideration. As stated, the trial court issued a thorough order with detailed findings of fact and conclusions of law, as well as a supplemental order with additional findings of fact and conclusions of law regarding its decision to grant Father's motion to relocate the children back to Kentucky. While the record may have been "cleaner" by entering Dr. Deters' report into evidence for the

underlying hearing, this was not an error that resulted in manifest injustice. The parties stipulated to Dr. Deters' report being admitted into evidence in the 2015 litigation and, although a few years have passed since that evaluation, the trial court's order uses the report in more of a historical context for its current ruling. This is not an error that resulted in manifest injustice.

## CONCLUSION

For the foregoing reasons, we affirm.

ALL CONCUR.

BRIEFS FOR APPELLANT:

William D. Tingley
Louisville, Kentucky

Timothy B. Theissen
Covington, Kentucky

BRIEF FOR APPELLEE:

Deanna L. Dennison
Covington, Kentucky