RENDERED:  FEBRUARY 25, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0218-ME

NATHAN SCOTT GUTHRIE                                           APPELLANT


v.                    APPEAL FROM ROWAN CIRCUIT COURT
                 HONORABLE WILLIAM EVANS LANE, JUDGE
                          ACTION NO. 16-CI-00244


MORGAN ELIZABETH MARTIN,
NOW STAMPER                                                    APPELLEE


OPINION
AFFIRMING IN PART,
REVERSING IN PART, AND REMANDING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; COMBS AND JONES, JUDGES.

CLAYTON, CHIEF JUDGE:  This is an appeal from multiple orders of the Rowan

Circuit Court regarding jurisdiction, venue, child custody, child support, and the

division of guardian *ad litem* ("GAL") fees.  We affirm in part, reverse in part, and

remand for additional findings of fact by the circuit court as hereinafter discussed.

## FACTUAL AND PROCEDURAL BACKGROUND

E.G. ("Child") was born on July 8, 2011, in Morehead, Kentucky, to Nathan Guthrie ("Father") and Morgan Martin ("Mother"). Father currently resides in Ohio with his wife, stepchild, Child, and infant son. Mother currently resides in Kentucky with her boyfriend, their infant daughter, and part-time with her other two (2) children from a previous marriage and her boyfriend's children from a previous relationship.

Father and Mother never married but resided together in Morehead until Child was three months old. After their separation, Father moved to Ohio. Following a brief reconciliation in which the three resided together in Ohio, Mother and Child moved back to Rowan County, Kentucky, and lived there continuously beginning in August 2012 through November 2016.

On November 14, 2016, Father filed a petition for custody in Rowan Circuit Court, and the circuit court entered a temporary agreed order on November 28, 2016. In the order, the parties agreed that Father would receive sole custody of Child and Mother would have visitation supervised either by the maternal grandfather or maternal aunt. Mother and Father reached this agreement after Mother admitted to having a substance abuse issue.

On March 31, 2017, Mother filed a motion requesting that the circuit court enter an order setting timesharing for Mother while the action was pending.

Mother alleged that Father had refused to allow her supervised timesharing unless she drove to Ohio. Father filed a response on April 5, 2017, objecting to any overnight visitations between Mother and Child until it was clear that Mother was drug-free. Father based his objections on Mother's alleged deceptive actions, the length of Mother's substance abuse issues, an incident in November 2016 in which Mother showed up to the exchange of Child so intoxicated that she was arrested, and the short amount of time that she had been out of rehabilitation. After holding a hearing, the circuit court ordered that Mother would have supervised visitation with Child every other weekend, from Friday to Sunday.

After the hearing, the circuit court entered its findings of fact, conclusions of law, and custody decree on June 13, 2017 (the "Custody Decree"), ultimately granting sole custody to Father. Child was to reside with Father, and Mother received visitation with Child every other weekend. For the first five (5) months, visitation would be supervised at all times by either the maternal grandfather or the maternal aunt, and for the first two weekends, Mother would not spend the night with Child and would not be around Child after 9:00 p.m. Moreover, the court ordered that Mother not drive with Child for the first five (5) months and that the parties would meet at the midpoint of their respective residences to exchange Child unless the parties agreed to another arrangement. Mother was also required to notify Father of all current and future prescriptions.

The circuit court further ordered that Father could request that Mother submit to a drug screen, and if the results were positive for any non-prescribed substances, Mother would pay for the drug screen. Otherwise, Father was required to pay for such drug screen. Additionally, the Custody Decree stated that Father could claim Child for state and federal income tax purposes every year in lieu of Mother paying child support.

Thereafter, while Mother was in residential rehabilitation for approximately ten months in 2018, her visitations with Child were reduced to one weekend per month in Kentucky.

Subsequently, on January 21, 2019, Mother filed a motion requesting that the court review her visitation with Child and grant her equal timesharing pursuant to Kentucky Revised Statutes ("KRS") 403.270 and KRS 403.315 or, in the alternative, standard visitation. Mother attached an affidavit to her motion attesting that she had consistently exercised visitation with Child since the court had placed Child in Father's sole custody, that Mother was living in a safe and stable residence with maternal father, that she was employed full-time as a peer support specialist at an addiction recovery care facility, that she had been sober for approximately twelve and a half months, that she attended Alcoholics Anonymous and Narcotics Anonymous meetings a minimum of twice a week, and that she worked with her sponsor daily.

On February 5, 2019, Father filed a motion with the circuit court to transfer the case to the Greene County Court of Common Pleas, Juvenile Division, in Ohio. The motion also contained a response to Mother's motion to review the visitation arrangement. In his motion, Father alleged that Child no longer had significant contacts with Kentucky and that Ohio was the proper jurisdiction because Child had primarily resided in Ohio with Father since November 2016.

On April 12, 2019, before holding a hearing, the circuit court made an oral ruling to transfer jurisdiction to Ohio after a conference call with Father's Ohio attorney and an Ohio judge. The circuit court entered a written order on May 6, 2019, after a motion from Father for specific findings of fact and a written judgment. On May 16, 2019, Mother filed a motion to alter, amend, or vacate the circuit court's order, arguing that the circuit court had failed to allow Mother the opportunity to call, question, and cross-examine key witnesses before entering its order.

Meanwhile, on May 20, 2019, the Greene County Court of Common Pleas entered an order granting Father's petition to register and enforce the parties' judgment of paternity and order of support, the Custody Decree, and all other orders from the Rowan Circuit Court.

On June 25, 2019, the Rowan Circuit Court entered an order staying its previous order and scheduling a hearing to determine the issue of jurisdiction

for August 1, 2019. After the hearing, the court entered findings of fact, conclusions of law, and an order on August 16, 2019 (the "Jurisdiction Order"). The circuit court concluded that, under the provisions of KRS 403.824, it maintained jurisdiction of the subject matter and the parties, that Child had "significant connections" remaining in Kentucky pursuant to KRS 403.824, and that "substantial evidence" regarding Child's "care, protection, and personal relationships" remained in Kentucky under KRS 403.824. Thus, the circuit court held that it maintained exclusive and continuing jurisdiction and would schedule a hearing in the future to determine timesharing.

Father initially appealed the Jurisdiction Order to this Court, but following Mother's motion to dismiss, this Court entered an order dismissing the appeal as interlocutory on February 12, 2020.

Upon Mother's renewing her motion for the circuit court to review visitation and to set a final hearing on February 18, 2020, the circuit court entered an order on March 16, 2020, allowing Mother to have unsupervised visitation with Child but keeping the same visitation schedule. The circuit court set a final hearing date and appointed Child a GAL at Mother's cost.

On June 26, 2020, Mother renewed her motion for equal timesharing and, more significantly, requested the circuit court to modify Father's sole custody to joint custody pursuant to KRS 403.270 and KRS 403.315. Moreover, Mother

requested that Child return to Kentucky and that Kentucky be her primary residence moving forward.

The circuit court conducted a hearing on October 28, 2020, at which the circuit court ordered Mother to submit the results of a six-month hair follicle test. The circuit court continued the matter until November 30, 2020. Mother submitted the results of the hair follicle test on November 5, 2020, which were negative for all substances.

The circuit court conducted the second portion of the final hearing on December 9, 2020, and the circuit court interviewed Child in chambers on December 21, 2020, at which the GAL was present. Moreover, the GAL submitted a report on December 30, 2020, which recommended expanding Mother's timesharing and both counseling for Child and family therapy for the parties.

Thereafter, the circuit court entered its findings of fact, conclusions of law, and order on February 1, 2021 (the "Final Order"). In the Final Order, the circuit court concluded that, due to Mother's stability over the previous three (3) years, the court would modify Child's custody from sole to joint custody. Moreover, the circuit court denied Mother's motion to move Child back to Kentucky but granted Mother's request for expanded timesharing with Child. Specifically, during the school year, Mother would have timesharing with Child

every other weekend, with Father remaining the primary residential custodian. Mother received seventy-five percent (75%) of the summer break with Child.

Additionally, the circuit court ordered that the parties enroll Child in individual counseling and actively participate and engage in counseling with Child. The court ordered that such participation could include joint participation if recommended by the counselor. The circuit court further ordered that the parties alternate the years in which they claimed Child as a tax exemption. Moreover, beginning in February 2021, Mother would have a child support obligation of $208.47 per month. The circuit court noted that no child support arrearage was due from Mother based on the support that Mother and her family had already provided to Child and because the circuit court had not previously ordered Mother to pay any child support.

Finally, the circuit court entered an order on GAL fees (the "GAL Fees Order"), stating that Father would be responsible for one-half and Mother would be responsible for one-half. Father filed a timely notice of appeal from the Final Order and the GAL Fees Order.

We will discuss further facts as they become relevant.

### ISSUES

Father argues the following eight issues on appeal: (1) the circuit court should have conceded that Ohio had jurisdiction pursuant to KRS 403.824;

(2) Kentucky is an inconvenient forum; (3) it is in Child's best interest that Father maintain sole custody; (4) Father should be relieved from the circuit court order's requirement that Child enroll in individual counseling and to jointly participate in family therapy with Child; (5) Father should retain the tax exemption; (6) the circuit court's child support order should be retroactive to the date upon which Father requested such child support, or March 12, 2020, and the circuit court's child support calculation was incorrect; and (7) the circuit court erred in dividing the GAL's fees.

**ANALYSIS**

As a preliminary matter, Mother argues that Father failed to detail the way in which he preserved his issues on appeal in his brief. We agree that Father has failed to comply with Kentucky Rule of Civil Procedure ("CR") 76.12(4)(c)(v), which requires that a brief contain "at the beginning of the argument a statement with reference to the record *showing whether the issue was properly preserved for review and, if so, in what manner.*" (Emphasis added.) Here, Father's brief has no statement of preservation of the issues he raises on appeal. CR 76.12(4)(c)(v).

Our options when an appellate advocate fails to abide by the rules are: "(1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions . . . ; or (3) to review the issues raised in the brief for manifest injustice only[.]" *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010)

(citations omitted). In this case, the shortcomings in Father's brief do not warrant striking his brief or reviewing the appeal solely for manifest injustice. Thus, we have elected not to impose the more severe options permitted under *Hallis* and CR 76.12 and will proceed with a review of the matter.

### a. Jurisdiction

Father first argues that the circuit court incorrectly determined that Kentucky had exclusive, continuing jurisdiction over the matter. The finding that a circuit court was acting within its jurisdiction is a question of law. *Shafizadeh v. Bowles*, 366 S.W.3d 373, 374 (Ky. 2011). On appeal, "[w]hether a trial court acts within its jurisdiction is a question of law; therefore, [the appellate court's] review is *de novo*." *Biggs v. Biggs*, 301 S.W.3d 32, 33 (Ky. App. 2009).

The Uniform Child Custody and Jurisdiction Enforcement Act (the "UCCJEA") is a uniform law that addresses subject matter jurisdiction in child custody cases. KRS 403.824. The UCCJEA was designed to prevent forum shopping and the problem of competing and conflicting orders regarding child custody in different states.

Specifically, KRS 403.824(1) states, in pertinent part, that a Kentucky court which has made an initial custody determination:

> has exclusive, continuing jurisdiction over the determination until . . . [a] court of this state *determines that neither the child, nor the child and one (1) parent, nor the child and a person acting as a parent have a*

> *significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships*[.]

(Emphasis added.)

Moreover, "the state having original jurisdiction over custody maintains exclusive continuing jurisdiction though the child has acquired a new home state if the general requirement of the substantial connection jurisdictional provisions are met." *Wallace v. Wallace*, 224 S.W.3d 587, 590 (Ky. App. 2007). Indeed, "exclusive, continuing jurisdiction prevails under the UCCJEA until the relationship between the child and the person remaining in the state with exclusive, continuing jurisdiction becomes so attenuated that a court could no longer find significant connections and substantial evidence." *Id.* (internal quotation marks and citation omitted).

Notably, a panel of this Court in *Biggs* found that a child did not need to reside in the Commonwealth for Kentucky to retain jurisdiction. 301 S.W.3d 34-35. Instead, the *Biggs* Court determined that significant connections to Kentucky included: (1) the child's father remaining a Kentucky resident; (2) the child having visits with his father in Kentucky despite living in Colorado; and (3) the child's younger half-sister, grandparents, and other relatives residing in Kentucky. *Id.*

This case is very similar, if not identical, to the *Biggs* facts. Here, Mother remained a Kentucky resident, and Child has consistently visited with Mother and Mother's family in Kentucky despite living in Ohio. Moreover, Child has three younger half-siblings who reside in Kentucky with Mother and grandparents and other relatives who reside in Kentucky. Thus, we affirm the circuit court's conclusion that both Child and one (1) parent have significant connections with Kentucky.

Additionally, KRS 403.824(1) requires a circuit court to determine that "substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships[.]" A panel of this Court has held that substantial evidence is "evidence of substance and relevant consequence, having the fitness to induce conviction in the minds of reasonable men." *Shafizadeh v. Shafizadeh*, 444 S.W.3d 437, 448 (Ky. App. 2012) (internal quotation marks omitted).

We agree that Mother has provided sufficient evidence to satisfy this requirement as well, including evidence that both she and several other relatives provided care and protection to Child when Child visited Kentucky. Moreover, numerous relatives and friends testified at the hearing regarding their relationships with Child. We find no error.

### b. **Forum**

Father next argues that Kentucky is an inconvenient forum. "Because the UCCJEA vests the trial court with the discretion to decline to exercise its jurisdiction if it finds Kentucky is not a convenient forum, its decision will not be reversed absent a showing that it abused that discretion in either accepting or declining jurisdiction." *Robinson v. Robinson*, 556 S.W.3d 41, 45 (Ky. App. 2018). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

A new state may not exercise jurisdiction for custody purposes unless a Kentucky court first determines that the new state would be a more convenient forum according to the factors listed in KRS 403.834. *Mauldin v. Bearden*, 293 S.W.3d 392, 401 (Ky. 2009). Those factors include:

> (a) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;
>
> (b) The length of time the child has resided outside this state;
>
> (c) The distance between the court in this state and the court in the state that would assume jurisdiction;
>
> (d) The relative financial circumstances of the parties;
>
> (e) Any agreement of the parties as to which state should assume jurisdiction;

(f) The nature and location of the evidence required to resolve the pending litigation, including testimony of the child;

(g) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and

(h) The familiarity of the court of each state with the facts and issues in the pending litigation.

KRS 403.834(2).

In this case, Father is asking this Court to review the facts that the circuit court has already heard and reapply them to the factors in KRS 403.834 again to make a different decision. However, our review is limited to whether the circuit court committed an error or abused its discretion in light of the facts of the case. Specifically, the circuit court found that Child had resided for a great deal of her life in Kentucky, the distance between the two locations was only two and a half hours, an income disparity existed between the two parties, and the Kentucky court was more familiar with the case. None of these findings was erroneous, and the circuit court did not abuse its discretion in this regard.

### c. Joint Custody

Father next argues that the circuit court erred in modifying Child's custody arrangement from sole to joint custody. In reviewing a child custody award, the appellate standard of review includes a determination of whether the factual findings of the family court are clearly erroneous. CR 52.01; *Reichle v.*

-14-

*Reichle*, 719 S.W.2d 442, 444 (Ky. 1986). A finding of fact is clearly erroneous if it is not supported by substantial evidence, a standard which we have already discussed, is "evidence . . . has sufficient probative value to induce conviction in the mind of a reasonable person." *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (internal quotation marks and citation omitted).

Moreover, since the circuit court is in the best position to evaluate the testimony and weigh the evidence, an appellate court should not substitute its own opinion for that of the circuit court. *Reichle*, 719 S.W.2d at 444. If the findings of fact are supported by substantial evidence, and if the correct law is applied, a circuit court's ultimate decision regarding custody will not be disturbed, absent an abuse of discretion. *Cherry v. Cherry*, 634 S.W.2d 423, 425 (Ky. 1982). Abuse of discretion implies that the circuit court's decision is unreasonable or unfair. *Kuprion v. Fitzgerald*, 888 S.W.2d 679, 684 (Ky. 1994). As a result, "in reviewing the decision of the family court, the test is not whether the appellate court would have decided it differently, but whether the findings of the family court are clearly erroneous, whether it applied the correct law, or whether it abused its discretion." *Coffman v. Rankin*, 260 S.W.3d 767, 770 (Ky. 2008) (citation omitted).

KRS 403.340 applies to modifications of a custody decree. Specifically, a court must determine whether "a change has occurred in the circumstances of the child or his custodian, and that the modification is necessary

to serve the best interests of the child." KRS 403.340(3). Additionally, the statute provides specific criteria to be considered by the court in determining the child's best interests. KRS 403.340(3)(a)-(f).

In this case, Father again fails to identify any clear errors or other errors that would rise to an abuse of discretion on the part of the circuit court. After hearing two-days' worth of testimony from numerous witnesses, including from both Child and her GAL, the circuit court made appropriate findings and correctly applied the proper statutory standards in reaching its decision. Father's arguments regarding certain convenience issues and Mother's previous substance abuse issues do nothing to convince us otherwise. Moreover, the record indicates that Child wanted to see Mother more often and enjoyed her time in Kentucky with her family. Thus, the circuit court's findings were not clearly erroneous, and it did not abuse its discretion in modifying Child's custody arrangement, and we affirm.

### d. **Counseling and Family Therapy**

Father next argues that the circuit court abused its discretion when it ordered counseling and family therapy for the parties. Counseling is one of many tools a circuit court has in effecting its purpose of "strengthen[ing] and preserv[ing] the integrity of the family and safeguard[ing] marital and familial relationships[.]" KRS 23A.110(1). Thus, Kentucky Family Court Rule of Practice

and Procedure ("FCRPP") 6(4) allows for a court to order a parent to undergo counseling in cases concerning child custody.

Here, Father cites this Court to no Kentucky law as to why he should not be required to comply with the circuit court's order. Further, the evidence of record – including the GAL's report – supports the conclusion that counseling and family therapy could be successful and productive tools in this situation. Therefore, the circuit court was within its authority to order Appellant to attend counseling sessions, and we thus find no abuse of discretion.

### e. **Child Tax Exemption**

Father next contends the circuit court erred in ordering the parties to alternate the years in which they could claim Child as a tax exemption, contrary to *Adams-Smyrichinsky v. Smyrichinsky*, 467 S.W.3d 767 (Ky. 2015). In *Smyrichinsky*, our Supreme Court cautioned that the allocation of a federal tax exemption is not a matter solely within the circuit court's discretion but is subject to Internal Revenue Code and accompanying regulations. *Id*. at 781-82. The Internal Revenue Code and regulations generally assign the exemption to the parent with whom the child resides for the greater number of nights in the calendar year. *See* 26 U.S.C.[1] §152(e)(4)(A); 26 C.F.R.[2] §1.152-4. Consequently, a circuit

---

[1] United States Code.

[2] Code of Federal Regulations.

court must do more than merely look at which parent has the highest income, divide the exemptions, or direct the parties to take the exemption in alternate years. *Id*. at 784.

Nevertheless, the *Smyrichinsky* Court also recognized that Kentucky courts retain the discretion to allocate the tax exemption based upon a finding that it would be in the child's best interests. *Id*. at 783. So long as a circuit court can articulate a sound reason why awarding the exemption to the non-custodial parent benefits the child, an appellate court generally will not disturb the circuit court's discretion. *Id*. at 783-84.

In this case, even though the parties have joint custody, Mother is the non-custodial parent for tax purposes, as Child stays with her for fewer nights than with Father. Here, the circuit court made no findings that Child would receive a greater benefit if the exemption alternated between Father and Mother. Thus, we conclude that the lack of findings was insufficient to meet the "heavy burden" of justifying why the assignment of the exemption to Mother in alternate years inures to Child's benefit. *Id*. at 784. Therefore, we reverse the circuit court's decision on this matter and remand to the circuit court to enter additional factual findings on this issue.

### f. **Child Support Award**

Father next argues that the circuit court's order failed to make its child support award retroactive to the date of Father's motion on March 12, 2020, in which he requested that the circuit court set an appropriate amount of child support in accordance with the Kentucky Child Support Guidelines.

KRS 403.213(1) provides that "[t]he provisions of any decree respecting child support may be modified only as to installments accruing subsequent to the filing of the motion for modification[.]" However, "the effective date of any increase is within the sound discretion of the trial court." *Giacalone v. Giacalone*, 876 S.W.2d 616, 620 (Ky. App. 1994) (citing *Ullman v. Ullman*, 302 S.W.2d 849, 851 (Ky. 1957)).

In this case, the circuit court heard testimony in which Mother, her sister, and her father detailed the child support they had provided to Father since Child had moved to Ohio. Such support was often given in the form of cash directly to Father with no receipt. Mother also introduced records showing payments made with receipts through electronic means. Moreover, in its order, the circuit court explained its reasoning in finding that Mother owed no arrearage, including the fact that the circuit court had never set a child support amount that Mother was required to pay and there were no pending child support orders concerning Mother. We thus find no abuse of discretion.

-19-

Father next argues that the circuit court's calculation of the child support amount was incorrect, as the circuit court mistakenly failed to include Father's medical, dental, and vision insurance expenses for Child.

The method for allocating health insurance between parents is explained in KRS 403.211(7)(a), which states that if health care coverage is both available and reasonable in cost, the court shall order a parent to maintain such coverage and *shall* allocate the cost between the parents in proportion to their share of the combined monthly adjusted gross income, regardless of which parent has physical custody. KRS 403.211(7)(c). According to KRS 403.211(7)(a), the court may order either or both parents to be responsible for these costs. Still, the statute expects that one parent will have financial responsibility and the other will owe reimbursement. Although a circuit court may deviate from the guidelines, it must provide adequate written findings justifying why the decision is just or appropriate. KRS 403.211(3).

Here, the circuit court made no specific findings regarding deviation from the statutory requirement that it allocate health insurance expenses between the parents. Given that the statute specifically requires a parent to provide health coverage if available and affordable, we must conclude the circuit court abused its discretion in failing to comply with KRS 403.211(7)(a) and allocate the costs of the private health coverage between the parents. On remand, Father shall provide

-20-

detailed evidence of his health insurance expenses. The circuit court is directed to allocate health insurance expenses in accordance with KRS 403.211 or make any written findings to support any deviation from that statute.

### g. GAL Fees

Finally, Father argues that the circuit court erred in ordering Father to pay half of the GAL fees when it had initially entered an order requiring Mother to pay all of the GAL fees. FCRPP 6 details that the court may appoint a GAL in cases involving the child custody. FCRPP 6(2) further directs that court may apportion the fees of the GAL "at the expense of the *parents* or custodians[.]" (Emphasis added.) The circuit court has the discretion to determine how to apportion this expense. FCRPP 6.

Here, the circuit court divided the fees equally between each parent. The circuit court was in the best position to evaluate each party's financial resources, and the record indicated that Father earned more than double the income of Mother. It was well within the circuit court's discretion to reconsider its ruling and determine that both parties utilized the GAL in her representation of Child. We affirm.

### CONCLUSION

For the reasons stated, we affirm the Rowan Circuit Court's order regarding Kentucky's ongoing exclusive jurisdiction over the case, Kentucky

remaining a convenient forum, awarding joint custody to the parties, ordering counseling and family therapy, and dividing the GAL fees equally between Father and Mother. However, we reverse the orders and remand to the circuit court for entry of additional factual findings on the issues of the child tax exemption and the allocation of health insurance expenses in accordance with KRS 403.211 or to make written findings to support any deviation from that statute.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Leah Hawkins
Mount Sterling, Kentucky

BRIEF FOR APPELLEE:

Marsha Megan Hughes Richmond
Morehead, Kentucky