RENDERED: JUNE 11, 2015
TO BE PUBLISHED

# Supreme Court of Kentucky

2014-SC-000309-DGE
2014-SC-000582-DGE

KEVIN ADDISON                   APPELLANT/CROSS-APPELLEE

ON REVIEW FROM COURT OF APPEALS
V.              CASE NO. 2012-CA-002210-MRE
HARDIN CIRCUIT COURT NO. 2006-CI-01275

LYDIA ADDISON                   APPELLEE/CROSS-APPELLANT

## OPINION OF THE COURT BY JUSTICE BARBER

### REVERSING

This appeal arises out of a post-decree modification awarding sole custody of the parties' two minor children to Appellant/Cross-Appellee, Kevin Addison ("Kevin"). The Court of Appeals reversed and remanded, concluding that the trial court erred by arbitrarily limiting the time allotted for the hearing and by refusing to permit the children to testify. Kevin asks this Court to reverse the Court of Appeals' Opinion and reinstate the trial court's judgment. Appellee/Cross-Appellant, Lydia Addison ("Lydia"), contends that the trial court erred by not relinquishing jurisdiction to the Indiana trial court; by not applying the best interests of the child standard to each child; in failing to make findings of fact or conclusions of law regarding the parties' financial resources or otherwise address the issue of attorney's fees; and in failing to

order Kevin to participate in a mental health evaluation.[1] For the reasons set forth below, we reverse the Court of Appeals and reinstate the ruling of the Hardin Circuit Court.

## I. BACKGROUND

Lydia and Kevin were married in 1999; they have two children, M.A. (age 7) and S.A. (age 11). In 2006, Kevin filed for dissolution of the marriage. On March 2, 2007, the Hardin Circuit Court entered a decree of dissolution, incorporating the parties' settlement agreement which provided that Lydia have sole custody of the children, with Kevin having reasonable parenting time. Before the decree was entered, Lydia and the children relocated to Indiana, where Lydia had a new boyfriend.

After the parties separated, Kevin deployed to Iraq for six months.[2] When he returned, Kevin had difficulty enforcing his visitation. Soon after, he filed a motion to compel visitation; Lydia petitioned to domesticate the foreign order in Indiana and sought to modify Kevin's visitation. On May 22, 2007, the Kentucky and Indiana courts conducted a telephonic hearing[3] and determined that jurisdiction of post-decree matters was properly in Kentucky.

Over the next several years, the parties filed a variety of motions on post-decree matters, including numerous motions by Kevin regarding his visitation.

---

[1] Lydia also raised an issue regarding her supervised visitation which is now moot. She has since received unsupervised parenting time based on the Hardin Circuit Parenting Guidelines.

[2] Kevin is employed by the Army Corps of Engineers.

[3] This hearing was pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA).

In March 2009, Kevin sought to be named joint custodian, because he was having trouble obtaining information about the children's medical and school records. Kevin also sought to include a proposed parenting-time schedule. Lydia objected to modification of custody and asserted that she was cooperating with visitation. Ultimately, the trial court ordered Lydia to show cause regarding her failure to cooperate with parenting time and set a hearing for April 6, 2010. On March 19, 2010, at the presentation of Kevin's renewed motion to adopt a parenting-time schedule, Lydia first apprised the court of her concerns that Kevin had sexually abused the children,[4] almost two years after she allegedly became aware of it. In light of these allegations, the trial court denied Kevin's motion. The Cabinet for Health and Family Services investigated, but did not substantiate the allegations of sexual abuse. By Order of July 19, 2010, Kevin was allowed supervised parenting time.

Kevin subsequently moved for unsupervised parenting time. He also filed a motion for Dr. Kelli Marvin to evaluate the parties and children and provide objective recommendations to the court concerning Kevin's parenting time and access to the children.[5] Dr. Marvin is a forensic psychologist whom the trial court often uses as an expert in matters relating to child dependency, neglect

---

[4] Subsequently, Kevin learned that the children had been in counseling since 2009. The children had been seeing Danielle Vance at Family Focus. Vance was not licensed and is related to a close friend of Lydia's.

[5] Previously, Kevin had filed a motion for an independent therapist to evaluate the children; however, the agreed-upon therapist would not see the children, because they were still being seen by Danielle Vance.

and abuse. By Order of February 2, 2011, the Court granted that motion and ordered Kevin to pay the costs of Dr. Marvin's evaluation. The parties subsequently filed various motions, including a motion by Lydia to submit additional information to Dr. Marvin and to clarify her role. The Court granted Lydia's motion to submit additional information and scheduled a hearing on the issue of Kevin's parenting time for January 2012.

On January 8, 2012, Dr. Marvin's extensive report was submitted. She recommended that Kevin receive liberal and unsupervised access to the children. Dr. Marvin concluded that whether or not Lydia had actually encouraged the allegations of sexual abuse, she had played an active role in denigrating Kevin in the children's eyes and that her conduct was consistent with parental alienation. Dr. Marvin explained that in such situations, "a transfer of primary care and custody is typically recommended as this is viewed to be the only means by which to ensure cessation of denigrating behaviors and afford the target parent the time necessary to repair parent child relationships." Further, she stated that "in extreme cases, supervised contact with the denigrating parent is advised." The Court granted Kevin unsupervised parenting time based upon Dr. Marvin's report. After Dr. Marvin's report was filed, Kevin filed a motion for an addendum for Dr. Marvin to make custodial recommendations. Kevin also filed a motion for sole custody and for Lydia's parenting time to be supervised.

The court granted Kevin's motion to have Dr. Marvin submit an addendum to her report making ultimate custodial recommendations. In the

February 2, 2012, addendum, Dr. Marvin recommended that Kevin be awarded primary residential care and custody of the children. She concluded that it was in M.A.'s best interests, that the children should remain together, and that S.A.'s best interests were unknowable. After the addendum was filed, Lydia filed a motion to transfer jurisdiction to Indiana. A hearing on the modification of custody was scheduled for March 30, 2012. Lydia moved to continue the hearing. By Order of March 1, 2012, the hearing was continued and Lydia's motion to transfer jurisdiction was denied. The case was set for a six-hour hearing on August 16, 2012.

The parties again filed various motions. Lydia moved the Court to appoint a guardian *ad litem* (GAL) for the children which was granted. She also sought to require Kevin to participate in a custodial evaluation by Dr. Zamanian; that motion was denied.

On August 16, 2012, the court conducted the hearing. The children were not permitted to testify. The court ordered that custody be transferred to Kevin and that Lydia have supervised visitation. On September 5, 2012, Lydia filed motions for unsupervised visitation and to supplement the record which were orally denied. On October 26, 2012, the court entered Findings of Fact, Conclusions of Law and Judgment. Lydia filed a motion to alter, amend or vacate the judgment and a motion for additional findings of fact. By Order of November 28, 2012, the court denied Lydia's motion for unsupervised visitation. Lydia appealed to the Court of Appeals which ordered the trial court to rule on Lydia's motions to alter, amend or vacate and for additional findings.

5

On June 21, 2013, the trial court entered Amended and Supplemental Findings of Fact, Conclusions of Law, Decree and Order.

By Opinion rendered May 16, 2014, the Court of Appeals reversed and remanded. The Court of Appeals determined that the trial court "improperly placed a time restriction on the hearing without considering the admissibility or exclusion of the evidence pursuant to the Kentucky Rules of Evidence, thereby denying Lydia the opportunity to present testimony." The Court of Appeals explained:

> *Sub judice* we believe that the trial court's time limit was an abuse of discretion given Lydia's lengthy witness list and what appears to be an arbitrarily imposed time limitation. We note that there did not appear to be an individualized assessment by the court regarding the time required by the parties to present their evidence when this matter was raised below by Lydia. While a standardized limitation may work in some instances, clearly the court should consider the individual case before imposition of time restrictions, which necessarily must be balanced with the court's inherent power to control its docket and to resolve matters expeditiously. *See* 75 Am. Jur. 2d *Trial* § 21 (2013)(discussing the general, inherent power of the court to control its docket). (Footnote omitted.)

The Court of Appeals also concluded that the trial court erred in not permitting the children to testify.

> [T]his Court in *Coleman* [*v. Coleman*, 323 S.W.3d 770 (Ky. App. 2010)], held that though the trial court pursuant to KRE 611(a)(3) retained discretion to exercise reasonable control over the mode and order of interrogating witnesses, it was error to exclude the child's testimony without a preliminary examination by the trial court to determine witness competency. In so finding, however, this Court cautioned that even if the court had made a determination of competency the court still had the authority under KRE 611(a)(3) to protect the child from undue harassment or embarrassment.

We note that KRE 611(a) provides:

6

(a) Control by court. The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to:

(1) Make the interrogation and presentation effective for the ascertainment of the truth;

(2) Avoid needless consumption of time; and

(3) Protect witnesses from harassment or undue embarrassment.

Upon review of this provision and applicable precedent, we conclude that while KRE 611 gives the court the discretion to "protect" the witnesses from undue harassment or embarrassment, it does not afford the court the discretion to unilaterally exclude the testimony of the only other two witnesses to the events at issue when they were not found to be incompetent to testify.

Certainly, the court could have taken means to protect the children from undue harassment and had the authority and discretion to do so. *See Coleman, supra.* Indeed, had the court been concerned that such would occur it could have either taken their testimony by avowal or interviewed them in chambers. KRS 403.290(1) permits the trial court to interview a child in camera for the purpose of determining the child's wishes as to custodian and to visitation. However, the court did not do so. Thus, without any preliminary determination of incompetency below, the court erred by refusing to take the testimony of the children, either on the stand or . . . as permitted by KRS 403.290, and in doing so denied Lydia the opportunity for a full and fair hearing of her case; consequently, reversal is appropriate on this ground.

The Court of Appeals was not persuaded by Lydia's argument that the trial court erred in retaining jurisdiction. The Court explained that under *Biggs v. Biggs,* 301 S.W.3d 32 (Ky. App. 2009), "continuing jurisdiction trumps home state jurisdiction." The Court of Appeals noted that Kevin had remained in Kentucky, he had visitation in Kentucky, and part of the children's family

7

remained in Kentucky. Lydia's argument that Kentucky was an inconvenient forum "should have been raised years ago after the initial jurisdictional determination by the Hardin Court, as opposed to . . . waiting years . . . [until] it appeared that the court would change . . . custody." The Court of Appeals explained that the trial court concluded it was retaining jurisdiction due to the length of time the case had been pending. The Court of Appeals believed that demonstrated that the trial court had considered the factors in KRS 403.834.[6]

---

[6] KRS 403.834 provides in pertinent part:

(1) A court of this state which has jurisdiction under KRS 403.800 to 403.880 to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. The issue of inconvenient forum may be raised upon motion of a party, the court's own motion, or request of another court.

(2) Before determining whether it is an inconvenient forum, a court of this state shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including:

(a) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

(b) The length of time the child has resided outside this state;

(c) The distance between the court in this state and the court in the state that would assume jurisdiction;

(d) The relative financial circumstances of the parties;

(e) Any agreement of the parties as to which state should assume jurisdiction;

(f) The nature and location of the evidence required to resolve the pending litigation, including testimony of the child;

The Court of Appeals could not say that the trial court erred in retaining jurisdiction "given the lengthy and complex litigation involving the parties *sub judice*."

The Court of Appeals was not persuaded by Lydia's argument that the trial court erred in failing to order Kevin to participate in a mental health evaluation by Dr. Zamanian. The Court of Appeals declined to address Lydia's remaining arguments concerning custody, visitation, and attorney's fees, because of its decision to remand.

This Court granted Kevin's Motion for Discretionary Review and Lydia's Cross-Motion for Discretionary Review.

## II. ANALYSIS

### A. The trial court did not abuse its discretion in limiting the hearing to six hours.

Kevin contends that the trial court did not abuse its discretion in limiting the hearing to six hours. He explains that the hearing was scheduled well in advance, giving each party ample time to prepare its case within the time allotted. Each party had equal time with the witnesses who testified. The Court of Appeals believed that the trial court's time limit was an abuse of discretion given Lydia's lengthy witness list. As Kevin notes, the Court of Appeals failed to

---

(g) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and

(h) The familiarity of the court of each state with the facts and issues in the pending litigation.

9

consider that the hearing date was scheduled "well in advance of a witness list being filed per the Family Court Rules of Procedure and Practice."

Lydia argues that she was limited in her ability to present evidence and introduce the testimony of a number of relevant witnesses at the hearing. She cites *Ingram v. Ingram*, 125 P.2d. 694 (Ok. App. 2005), which sets forth a list of factors for (Oklahoma) courts to consider when determining if specific time factors should be imposed. We note that one of those factors is that time limits should be imposed sufficiently in advance of trial for litigants to prepare for trial within those limits. That is exactly what the trial court did here when it scheduled the hearing approximately six months in advance.

Lydia contends that the trial court indicated it "never provides more than six hours for any hearing." We disagree with that characterization. The judge stated that "I only allocate six hours if there is going to be expert testimony. Generally, I anticipate that we can get these [modification of custody hearings] wrapped up in four hours." Lydia explains that she requested an entire day for the final hearing, due to the complex nature of the case. The record reflects that the hearing began at approximately 9:05 a.m. and ended at approximately 4:45 p.m., including time for preliminary matters and breaks. We would consider that an entire day.

The trial court "is vested with a large discretion in the conduct of the trial of causes and an appellate court will not interpose to control the exercise of such discretion by a court of original jurisdiction, unless there has been an abuse or a most unwise exercise thereof." *Transit Auth. of River City (TARC) v.*

*Montgomery*, 836 S.W.2d 413, 416 (Ky. 1992). In exercising that discretion, "a trial court clearly has the power to impose reasonable time limits on the trial of both civil and criminal cases . . . . *See, United States v. Reaves*, 636 F.Supp. 1575 (E.D.Ky.1986). As long as these trial time limits are not arbitrary or unreasonable we will not disturb the court's decision on review." *Hicks v. Commonwealth*, 805 S.W.2d 144, 151 (Ky. App. 1990). The trial court also has "discretion 'to . . . control . . . the amount of evidence produced on a particular point.' *Washington v. Goodman*, 830 S.W.2d 398, 400 (Ky. App.1992) (citing *Woods v. Commonwealth*, 305 S.W.2d 935 (Ky.1957), and *Johnson v. May*, 307 Ky. 399, 211 S.W.2d 135 (1948))." *Branham v. Rock*, 449 S.W.3d 741, 749 (Ky. 2014).

Unquestionably, the trial court was very familiar with the history of this case when it allotted six hours for the hearing. As the Court of Appeals noted, the length of time the case had been pending before the trial court was a factor in its decision to retain jurisdiction. The trial court already had Dr. Marvin's more-than-seventy-five-page report when it scheduled the hearing, and had heard endless motions and arguments long before that. Given the trial court's experience with modification hearings in general, and its familiarity with the facts and circumstances of this particular case, we cannot say that the trial court abused its discretion in limiting the hearing to six hours.

11

**B. The trial court did not err in refusing to permit the children to testify.**

Lydia explains that before trial she requested that S.A. and M.A. be allowed to testify as to their wishes regarding their custodian and parenting time. The trial court declined to interview the children in chambers. Lydia does not dispute that a decision to interview the children *in camera* pursuant to KRS 403.290(1)[7] lies within the trial court's sound discretion, but argues that neither KRE 611 nor KRS 403.290(1) can be interpreted to exclude a child when called as a witness by a party in a custody proceeding. The Court of Appeals agreed.

The Court of Appeals explained that "while KRS 611 gives the court the discretion to 'protect' the witnesses from undue harassment or embarrassment, it does not afford the court the discretion to unilaterally exclude the testimony of the only other two witnesses to the events at issue when they were not found to be incompetent to testify."

The Court of Appeals relied upon its earlier decision in *Coleman v. Coleman*, 323 S.W.3d 770 (Ky. App. 2010). In *Coleman*, the mother asked to call her ten-year-old daughter to testify at a hearing on a change of custody motion. The trial court denied the request, based upon its concerns about the child's age, the pressure of testifying and putting the child in a position of having to choose between her parents. The trial court also denied the mother's

---

[7] KRS 403.290(1) provides in relevant part that "[t]he court may interview the child in chambers to ascertain the child's wishes as to his custodian and as to visitation."

12

request to permit the child's testimony by avowal or to conduct an interview in chambers. *Coleman* found no abuse of discretion in the trial court's refusal to interview the child in chambers, because the language of KRS 403.290(1) is discretionary; however, the Court concluded that it was error for the trial court to exclude the child's testimony without first having determined her competency:

> *Leahman v. Broughton,* 196 Ky. 146, 244 S.W. 403 (1922) . . . . makes clear that anyone may testify as long as they are deemed to be competent. However, under KRE 611(a)(3), the trial court retains discretion to 'exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to . . . [p]rotect witnesses from harassment or undue embarrassment. KRE 611(a)(3).
>
> . . . .
>
> [I]t was error to exclude the child's testimony without a preliminary examination by the trial judge to determine her competency . . . under KRE 601 . . . .

*Id.,* at 772.

We disagree. *Leahman* did not involve child custody or parenting time. *Leahman* involved an action for an alleged wrongful forcible assault made upon the child's mother. The mother had testified that her then-five-year-old daughter was present at the time and saw what occurred. At the time of trial, the child was eight years old. She was examined by the court out of the jury's presence and substantially corroborated her mother's version of the facts which was in conflict with the defendant's; however, the child's testimony was excluded because the trial court determined that she was incompetent due to

13

her age. The former Court of Appeals concluded that the trial court erred in excluding the child's testimony which was reasonably intelligent for her age.

> The reason given for the disposition of the courts in modern times to widen the rule relating to the competency of witnesses, including infants . . . is that the essential thing in the conduct of litigation is for the tribunal to have before it the facts of the case, and that as few obstructions should be thrown in the way of obtaining them as possible, leaving it to the jury or other tribunal passing upon the facts to protect the interest of the opposing litigant by giving such credence to the offered testimony, even to rejecting it entirely, as the circumstances show it deserves.

*Id.,* at 405.

The trial court had the facts of this case before it. As Kevin explains, "the testimony of the children would offer nothing to the [trial] Court in determining the children's best interest. The [trial] Court had the benefit of countless hours of interviews of the children by the GAL and the two psychologists." Lydia notes the protections of KRE 611(a)(3) and that the General Assembly took measures to protect children by providing a specific mechanism for the trial court to ascertain the child's wishes in KRS 403.290(1). That is true. The General Assembly wisely left the decision to interview a child in chambers to the sound discretion of the trial court. We also believe that the decision to permit a child to testify in a proceeding involving custody or visitation should be left to the sound discretion of the trial court. To hold otherwise would render the protection afforded by KRS 403.290(1) meaningless. "The elementary principles of humanitarianism are so strongly against the placing of a child between its parents that we feel a trial court should have a wide latitude in protecting the child." *Parker v. Parker*, 467 S.W.2d 595, 597 (Ky. 1971).

14

As the Court of Appeals eloquently stated in *C.T. v. F.T.*, No. 2007-CA-001452-ME, 2008 WL 5215939, at 5 (Ky. App. 2008):

> [W]e do not condemn but rather applaud the court for using its discretion to disallow testimony from two young children who were clearly traumatized by the enduring drama of their parents['] divorce. Furthermore, it appears that the GAL adequately advocated for his clients' best interests without subjecting them to yet another "expert" interview that is not required by law. The GAL and the court had the benefit of numerous opinions from experts as well as other witnesses to form their assessment of a then eight-year-old boy and five-year-old girl. Their young age and the pressure applied by Mother severely diminish, if not completely obscure, the value of their opinions or testimony. The continued pursuit by Mother to put her children directly in the "line of fire," only further proves the soundness of the family court's judgments.

To the extent that *Coleman* holds that a trial court must permit a child to testify in a proceeding involving custody or visitation, unless that child is incompetent to testify, *Coleman* is overruled.

## C. The trial court did not err in retaining jurisdiction.

In 2007, Lydia first requested that the trial court transfer jurisdiction to Indiana. At that time, the Hardin Circuit and Indiana judges held a telephonic conference pursuant to the UCCJEA and determined Kentucky was the proper jurisdiction for post-decree child custody matters. Lydia did not raise the issue again until 2012, just months before the final hearing. Jurisdiction is a question of law which we review *de novo*. *Grange Mutual Insurance Company v. Trude*, 151 S.W.3d 803, 810 (Ky. 2004).

When the initial custody determination was made in Kentucky, it is undisputed that Kentucky was the children's home state. When the subject hearing took place, the children had been Indiana residents for approximately

15

five years. The original decree state retains continuing, exclusive jurisdiction if the child and the parent (or person acting as a parent) remaining in this state have significant connections. *Biggs v. Biggs*, 301 S.W.3d 33-34 (Ky. App. 2009). *Biggs* holds that if the parent remaining in the original decree State exercises at least some visitation with the child in that state, significant connections exist. That is exactly the situation *sub judice.*

Despite Lydia's statement that the timing is of no consequence, clearly her timing is suspect. As the Court of Appeals noted, "five years into the proceedings, Lydia sought transfer of this matter to Indiana and argued that Kentucky was an inconvenient forum." That was after Dr. Marvin had completed her report. We agree with the Court of Appeals that Lydia should have raised the issue of whether Kentucky was an inconvenient forum years ago.

We are not persuaded by Lydia's argument that the trial court did not consider the factors set forth in KRS 403.834. The trial court specifically stated it was retaining jurisdiction based on the length of time the case was pending before it and its familiarity with the issues of the case. We find no error.

### D. The trial court properly applied the best interests of the child standard to each child.

Lydia contends that the trial court failed to apply the best interests of the child standard to each child.[8] The determination of a child's best interests is a

---

[8] KRS 403.340(3) provides in relevant part:
[W]hether a modification of custody is in the best interests of the child, the court shall consider the following:

16

factual finding and the standard of review is whether the finding of fact was clearly erroneous. A finding of fact is clearly erroneous only if it is manifestly against the great weight of the evidence. *Frances v. Frances*, 266 S.W.3d 754 (Ky. 2008).

Dr. Marvin opined that: (1) it is in the best interest of the children that they remain living together and are not separated, (2) it is certainly in the best interest of M.A. that she reside primarily with Kevin, and (3) Lydia played a definitive role in the false sexual abuse allegations and in the denigration of the relationship between Kevin and the children. Further, Dr. Marvin stated that the best interest of S.A. is unknown due to the risk that she will have a negative reaction to such a move, the severity of which is unpredictable. Nevertheless, Dr. Marvin recommended that based on the totality of the circumstances both children should be in the sole custody and care of their father, Kevin.

---

(a) Whether the custodian agrees to the modification;

(b) Whether the child has been integrated into the family of the petitioner with consent of the custodian;
(c) The factors set forth in KRS 403.270(2) to determine the best interests of the child;

(d) Whether the child's present environment endangers seriously his physical, mental, moral, or emotional health;

(e) Whether the harm likely to be caused by a change of environment is outweighed by its advantages to him; and

(f) Whether the custodian has placed the child with a de facto custodian.

17

On June 21, 2013, the trial court issued Amended and Supplemental Findings of Fact. Kevin notes that the trial court listed all the factors of KRS 403.340 and 403.270. The court clearly explained that given Dr. Marvin's recommendation the children should stay together, that M.A. should reside with her father, and given the harmful role played by their mother, it is in the best interests of both children to be in the sole custody of their father. The trial court did not fail to address Dr. Marvin's concerns about the transfer of S.A. to Kevin's care. The trial court determined that the risk of harm to S.A.'s mental health was greater if she remained in her mother's care than if she was transferred to her father's care. "**Custody** decisions should be based on all the statutory factors and **not** just on psychological evaluations." *Reichle v. Reichle,* 719 S.W.2d 442, 445 (Ky. 1986). The trial court properly considered the statutory factors and determined what was in the best interests of each child.

### E. The trial court properly ruled that each party is responsible for his or her own attorney's fees.

Lydia contends that the trial court erred, because it did not make findings or conclusions regarding her request for attorney's fees pursuant to KRS 342.220. The statute provides in relevant part that "[t]he court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for attorney's fees." In its amended and supplemental findings, the Court declined to award Lydia attorney's fees, having found that her actions necessitated these proceedings. "[E]ven if a [financial] disparity exists, whether to make such an assignment

18

and, if so, the amount to be assigned is within the discretion of the trial judge . . . . 'There is nothing mandatory about it.'" *Neidlinger v. Neidlinger*, 52 S.W.3d 513, 519 (Ky. 2001) (citations omitted). We find no abuse of discretion.

### F. The trial court did not err in denying Lydia's motion that Kevin participate in an evaluation with Dr. Zamanian.

Lydia contends that Dr. Marvin was Kevin's expert and that the trial court should have required him to participate in an evaluation with her expert. The argument lacks merit. Initially, the court granted Kevin's motion to have the children evaluated by an independent psychologist. As ordered, the parties agreed upon a psychologist; however, that psychologist refused to see the children because they were still seeing Danielle Vance. As a result, Kevin filed a motion for evaluation by Dr. Marvin. Lydia did not seek to compel Kevin's participation in an evaluation by Dr. Zamanian, until she became aware of Dr. Marvin's findings. Again, Lydia's timing is suspect. As the Court of Appeals explained, Lydia "cited to CR 35.01[9] in the motion, but never asserted that Kevin's mental health was in controversy." The Court of Appeals found "Lydia's motion requesting that Kevin undergo another custodial evaluation with

---

9 CR 35.01 provides:

> When the mental or physical condition ... of a party ... is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician, dentist or appropriate health care expert, or to produce for examination the person in his custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

citation to CR 35.01 to be insufficient to establish good cause and that Kevin's mental health was in controversy.'" We agree and find no error.

### III. CONCLUSION

For the foregoing reasons, we reverse the Court of Appeals and reinstate the ruling of the Hardin Circuit Court.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Jeremy Scott Aldridge
Carey Hendricks Aldridge
Aldridge & Aldridge Law Firm
2411 Ring Road, Suite 102
Elizabethtown, KY 42701

COUNSEL FOR APPELLEE:

Allen McKee Dodd
Dodd & Dodd Attorneys, PLLC
325 West Main Street, Ste. 2000
Lousiville, KY 40202