RENDERED: MARCH 19, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1305-ME

KIMBERLY ANN ANGULO (NOW KIMBERLY ANN SHARPE)　　　　　　　　　　APPELLANT

v.　　　　　　APPEAL FROM KENTON FAMILY COURT
HONORABLE DAWN M. GENTRY, JUDGE
ACTION NO. 16-CI-00473

MIGUEL ANGEL ANGULO; A.A.,
A MINOR CHILD; AND V.A., A
MINOR CHILD　　　　　　　　　　　　　　　　　　　　　　　　APPELLEES

OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE: COMBS, LAMBERT, AND K. THOMPSON, JUDGES.

LAMBERT, JUDGE: In this post-dissolution action, Kimberly Ann Angulo (now

Sharpe) (the mother) has appealed from the July 24, 2019, order of the Kenton

Family Court denying her motions to transfer physical custody and to modify

parenting time and the primary residence of her minor children, A.A. (child 1) and

V.A. (child 2) (collectively, the children). She contends that the family court

abused its discretion in denying her requests for the children to testify at the hearing in this matter or by avowal, by denying her request to return the children to her, and by considering improper evidence. Because we hold that the family court abused its discretion in refusing to permit the children to testify and by adequately supporting its decision with substantial evidence, we vacate the order on appeal.

The mother and Miguel Angel Angulo (the father) were married in November 2001 in Kenton County. Two children were born of the marriage, child 1 (born in 2005) and child 2 (born in 2010). The parents separated in February 2016, and the father filed a petition to dissolve the marriage the following month. The family court appointed a guardian *ad litem* (GAL) to represent the children's interests. Residential custody of the children was disputed, and dependency, neglect, and abuse (DNA) cases were filed for both children in mid-2016. A trial was held on October 20, 2016, where both parties testified. By order entered November 7, 2016, the family court granted the parents joint legal custody with the father having physical custody. The court set the matter for review on January 6, 2017, and ordered the mother to obtain a psychological evaluation by a qualified psychiatrist or psychologist prior to that date and to follow the orders of the examining physician. Both were ordered to attend parenting classes and to not have direct contact with each other. An intermediary was to be used to accommodate exchanges of the children. As to a 2010 domestic violence petition,

the court found insufficient evidence to establish that an act of domestic violence had occurred that day. But it opted to enter a mutual temporary restraining order that neither party commit further acts of abuse or violence.

The mother subpoenaed the children to testify at the January 6, 2017, hearing, and the GAL moved to quash the subpoena. In the event the children were permitted to testify, the GAL requested that the court determine the competency of the children with the parents excluded. After the January 6th hearing,[1] the court entered a calendar order in which it ordered the children to remain with the father as residential custodian for the remainder of the current school year, then transfer to the mother's residential custody on June 1, 2017. The parenting time schedule was to flip to the father having three weekends per month with the mother as residential custodian, as long as she had sold the house and obtained suitable housing. The children were to attend school in the mother's school district for the 2017-2018 school year. Neither party was permitted to use corporal punishment. The parties were to complete parenting classes by June 1, 2017, and pay the GAL fees. The mother was ordered to undergo her psychological evaluation by April 30, 2017.

---

[1] Judge Lisa Bushelman was the original judge assigned to this case. After she left the bench, various special judges presided until Judge Dawn M. Gentry was appointed to the position and took over the case. Judge Michael Foellger presided over the January 6, 2017, hearing, and he signed the calendar order.

On February 28, 2017, the family court entered supplemental findings of fact and conclusions of law.[2] In this order, the court addressed the mother's motion for extension to obtain a psychological evaluation, noting that this evaluation and suitable housing were pre-conditions to the physical custody change it had ordered. The court indicated that it had met in chambers with the children during the January 6th hearing:

> 4. The Court met in chambers with the 2 minor children involved herein, A.A. and V.A., and learned of their wishes with regard to their parents and the custodial arrangement. The Court will order what the minor children requested, and, therefore, the Court Orders that the father shall retain physical custody of the minor children with the visitation arrangement currently in effect, until the end of the school year, or approximately June 1, 2017. Thus, the mother shall continue to have 3 weekends per month as parenting time with the children pursuant to Paragraph 5 of this Court's Order of November 7, 2016. Conditioned upon the mother obtaining an acceptable psychological evaluation and an appropriate and suitable residence for the minor children, physical custody shall be transferred to the mother effective June 1, 2017 and shall continue therewith during the school year 2017-2018. The parties are hereby to mediate all additional parenting time, as well as summer parenting time, for the 2017 summer and thereafter, including vacation and holiday parenting time.

---

[2] By this time, Judge Gentry was the presiding judge in this case and signed this order. A letter in the record to Judge Gentry from counsel for the father indicates that he had prepared the decree and findings in response to the ruling of January 6th, noting that Judge Foellger was no longer on the bench and that the mother's counsel of record at the hearing had been replaced. Counsel for the father and the GAL were the only persons – apart from the parties – present at the hearing who were still involved in the case.

The decree of dissolution was entered by separate order on March 20, 2017.

On April 7, 2017, the mother filed a status report and notice of compliance. She indicated that she had begun the process to sell the marital residence and had undergone a psychological evaluation with Dr. Donald Brewer the previous month. Dr. Brewer's handwritten report was attached, in which he noted the mother was not at risk to herself or others and did not recommend any treatment. The father objected to the report because it did not indicate that any objective testing was performed. He noted the mother's history of bipolar disorder for which she refused treatment. In a separate filing, the mother filed a certificate showing that she had completed the Nurturing Parenting Program at Family Nurturing Center in April. In May 2017, the mother filed a notice that she was relocating to an address in Cincinnati, Ohio.[3]

Also in May, the mother filed a motion to hold the father in contempt for various issues, including his failure to provide proof that he had completed the parenting classes and one of the children's school absences and tardiness. She said that the father had moved the children to Louisville in 2016 without permission of the court and that he had not added her as an approved parent with their school for the 2016-2017 school year as ordered. The father had also refused to allow her to

---

[3] The mother did not ultimately move to Cincinnati. Rather, she later testified that she moved to a home up the street from the marital residence.

speak with the children on the telephone during the week. By a separate filing, the mother indicated that the marital home was in foreclosure and scheduled to be sold at public auction. She was also remaining compliant with the court's order to seek a psychological evaluation by continuing her counseling at North Key.

In his own status report, the father objected to the anticipated change of physical custody, arguing that the mother had not completed a satisfactory psychological examination or provided evidence of an acceptable home. He also questioned the viability of the court's order that the children should return to the mother's physical custody. The children expressed a desire to return to their old school with their friends. In light of the sale of the marital residence and in the event the mother had not established a new residence in the same school district, they may not have been returning to their prior school. In a separate filing, the father also objected to the mother's notice of relocation, noting the court's desire to return the children to their old school district in Kenton County as being the basis for the original order. He therefore sought a ruling that he could retain physical custody of the children for the 2017-2018 school year.

The court held a hearing on the parties' motions on May 26, 2017, and entered an order on June 22, 2017. The court ordered that the children would attend school in the father's school district for the 2017-2018 school year and that the parenting schedule would remain as it was currently set. The court noted that

one of the children had an issue with tardiness while attending school and directed the father to work with the local Cabinet for Health and Family Services to ensure the tardiness did not continue. The mother was to be listed as an approved parent with the children's schools. The mother sought reconsideration of this order, which was denied.

On July 3, 2017, the mother filed an *ex parte* motion for emergency custody, citing one of the children's exposure to pornography at a cousin's home while the father was exercising parenting time as well as the father's history of drinking on a daily basis and methamphetamine use. In his response, the father admitted that the child had been exposed to pornography, but he asserted that he had taken steps to remedy the situation and that he had not had alcohol in a long time and had never used drugs. He also argued that the mother had failed to establish that she was psychologically fit. By a separate motion, he moved to limit the mother's parenting time. The court scheduled a hearing on the motions.

In November 2017, the mother filed an affidavit to supplement her emergency motion. In the affidavit, the mother detailed that the children were inappropriately dressed for the weather at the September 1, 2017, hearing, and they had not bathed in five days. She stated that the father had not given one of the children medication for an ear infection, had not taken the children to the dentist, and did not take one of the children for her 6th Grade shots. She claimed that he

was giving the children Melatonin every night, and his loud sexual intercourse with his girlfriend would wake and scare the children. The children's tardiness and absences from school continued, and he would not allow the mother to have nightly phone calls with the children as ordered by the court. The mother still sought modification of the children's primary residence.

Following a continuation of the hearing on November 21, 2017, the court ordered the mother to undergo a full psychological examination. Her parenting time was to be supervised pending the results of the examination and further court hearings. The court denied the motions to change custody and to suspend or supervise the father's time. Both parties were found in contempt for failing to pay the GAL fees as ordered. The court entered a calendar order followed by a written order, which was entered on December 19, 2017.

The mother filed another emergency *ex parte* motion to enforce court-ordered, supervised parenting time on December 19, 2017, as she had not seen the children since the hearing in November. The court denied the emergency motion and set the matter for a hearing. The court entered an agreed order the same month providing that the Children's Law Center would be appointed as the GAL for the children.

In June 2018, the mother filed another emergency motion to suspend the father's parenting time with the children. In an attached affidavit, the mother

-8-

claimed that the children had a history of urinary tract infections and E-coli in their urine while with the father. The father refused to give the children the prescribed antibiotics to treat the infections, and he did not provide adequate feminine hygiene products for child 1. The children would prepare dinner for themselves without adult supervision, and the father's girlfriend would walk around in thong underwear. The children were often hungry and left alone for extended periods of time, including in the father's car while he worked. The father objected to the motion, noting that the mother had made "wild accusations" about what the children had told her. The court denied the emergency motion and scheduled a hearing for later that month.

The mother subpoenaed both children to testify at the hearing, although they did ultimately not testify. At the conclusion of the hearing, the court entered a calendar order on July 2, 2018, related to the parents' behavior as to the children. They were to ensure the children's hygiene was properly addressed and that hygiene items were available. They were also to ensure the children were fed. The court entered an agreed order on July 31, 2018, ordering that the mother's parenting time with the children would be unsupervised and that the parties were not to discuss the case or speak in a derogatory manner about the other parent within the hearing of the children.

In August 2018, the mother filed a motion related to the remaining issues in their dissolution action, including property division and debt allocation, and requested that physical custody of the children be transferred to her pursuant to the court's previous order or that the court modify parenting time and the children's primary residence to her. The mother claimed the father often left the children with third-party babysitters overnight and refused to permit her to care for them instead. In addition, the father refused to sign the necessary forms to permit her to be added as an approved parent at the children's schools. The parties agreed to attempt to mediate these issues before a trial.

The mother subpoenaed the children to testify at the August 28, 2018, hearing. The GAL moved to quash the subpoenas due to the late notice and because they would have nothing to testify to regarding the mother's completion of the psychological evaluation. The court scheduled a trial date for November 15, 2018. The father indicated in a pre-hearing filing that he would call the children as witnesses at the trial. The GAL again objected to the children testifying.

Prior to the start of the November 15th hearing, the parties discussed several issues. Counsel for the father moved to exclude any testimony with regard to the children prior to the December 2017 order. This hearing, he argued, should be limited to events that had occurred since that time because the court should or could have considered earlier events when it entered its order in December 2017.

Counsel for the mother pointed out that the court had not heard from the children since January 6, 2017, in an *in camera* setting. The court granted the father's request and would not permit the entry of testimony or evidence prior to November 21, 2017 (the date of the hearing at which evidence was introduced).

When discussion of the preliminary matters was completed, the mother presented her case. She first called licensed psychologist Dr. Jeff Schwerzler. He met with the mother on December 1, 2017, for an evaluation. As part of his evaluation, he spoke with the father and GAL and reviewed reports and court records. He reported that the mother was experiencing situational anxiety due to the custody issues. Once the issues were resolved, the anxiety would lessen. After speaking with the father, who mentioned his concerns about the mother's use of diet pills, anger during the marriage, and inappropriate conversations with the children, Dr. Schwerzler said much of this was confirmed by watching earlier court proceedings. He did not believe the mother had bipolar disorder based upon his evaluation. His ultimate diagnosis was adjustment disorder with anxiety and depressive mood. He believed she would benefit from psychotherapy to deal with her anxiety and learn how to behave appropriately during times of stress. She did not have any serious mental disorders. Dr. Schwerzler testified that in an addendum to his report, he included his review of additional medical records, court records, and his conversation with the GAL. His conclusions did not change after

considering the additional information. When he talked with the mother, she expressed concerns about the children's well-being in their current living situation and alluded to physical abuse and domestic violence by their father. He did not investigate any of the mother's allegations related to the children. He believed the mother was honest throughout the process, noting that the testing contained questions to evaluate whether she was faking. Dr. Schwerzler had not been asked to, and did not perform, a custodial evaluation.

The mother next sought to call child 1 as a witness. The GAL objected to the testimony of the children, noting that they had already testified. The issue to be decided in the hearing was whether the parenting schedule should be reversed, for which the mother introduced the evidence that she had undergone a psychological evaluation. There was no need for either child to testify. The GAL argued it was not fair for the children to be required to testify and take sides in this adult argument. The father joined in the objection. The mother argued that they were also before the court on the emergency motion she filed in June 2018, in which there were allegations of neglect and abuse. Without the children's testimony, the court would not get an accurate picture of what was happening to them. It had been over a year since the children had been before the court, and permitting them to testify would eliminate any hearsay objections. The mother brought up reports the children made to the nurse practitioner, which led her to

make a report to the Cabinet for Health and Family Services. Both the GAL and the father pointed out that a DNA case was not filed as a result. However, the GAL did disclose that the children had told him that they wanted to live with the mother. But the GAL went on to say that this was not necessarily in their best interests. The father accepted as a stipulation that the children told the GAL they wanted to live with the mother. The court asked the father if there were any pending DNA cases in Jefferson County, where he resided, and he said there were not. The GAL stated that he had not seen the fear the mother reported, nor had he received a report of abuse from the mother or the father. After considering these arguments, the court sustained the GAL's objection to the children's testimony and noted in the record the stipulation that the children wanted to live with the mother.

Following this ruling, the mother asked the court to permit her to enter the children's testimony by avowal to preserve the issue for appeal. The father argued that the mother could proffer the information the children would provide rather than requiring them to testify. To put the children on the witness stand would defeat the purpose of the ruling. The court would have discretion based on the age of the witnesses to determine whether their testimony would be competent. The mother argued that there was no motion to determine their competency. When the mother argued that the children were being harmed by not being permitted to present their testimony and be heard, the court replied that there were other

avenues to take, such as the filing of DNA petitions, which had not been done. The GAL stated that he was not seeking a competency hearing and suggested that the parties brief the issue of whether the mother should be permitted to introduce the children's testimony by avowal. The court permitted the parties to do so and set a continuation date for January 24, 2019.

The hearing resumed on January 24, 2019, as scheduled. The mother testified first. She lived in Florence, Kentucky, at a residence close to where the marital residence was, meaning that she lived in the same school district the children had previously attended. The mother testified extensively about issues with the father, including that he had moved the children to Louisville and a new school without her knowledge or approval. She reported the children's hygiene issues and the multiple infections the children had in their urinary tracts and vaginal areas. She had not approved the father's decision to change their medical provider. She also expressed concerns about the father's girlfriend, the food situation, and child 1's cutting behavior.

The mother testified that she had obtained a psychological evaluation. The mother testified by avowal that she had undergone two evaluations, the first by Dr. Brewer. She also testified about the court-ordered parameters for this evaluation, including that the examiner be licensed. After her avowal testimony was completed, the mother went on to state that she had followed all orders with

respect to the evaluation she was required to obtain in order to get residential custody. The other condition was that she have safe living conditions. She currently lived in a house with three bedrooms. She was the only resident of the house, excluding the children, who lived there on weekends. The father agreed to stipulate that the housing was suitable, which the court accepted.

We note that the father objected on hearsay grounds multiple times during the mother's testimony. Also during the mother's testimony, the court indicated that it would not be changing residential custody of the children based on the "checking of a box" but rather would be considering the current situation of the children and their best interests. Towards the end of that day of the hearing, the mother raised the issue of taking the children's testimony by avowal, which had been briefed since the last hearing date but not ruled on by the court. The court indicated that the motion was denied and it would enter a written order. Counsel stated that she would be taking the depositions of the children to proffer this testimony.[4]

The hearing continued several months later on July 2, 2019. Prior to the hearing, the father filed a motion to compel the parties to attend co-parenting education and work out a parenting schedule. He also moved the court to continue

---

[4] We are not aware that these depositions were taken as they were not included in the record on appeal.

the hearing. The GAL did not object to the motion, although the mother did object. The court proceeded with the hearing, and the mother continued her testimony as to what had happened since the last hearing date. The father stipulated that he had moved again in Louisville, but he had not notified the mother or the court of this move as he was court-ordered to do. The mother expressed concern about the multiple moves the father had made. She had placed both children in counseling.

The father testified next. He discussed the children's education and health, including taking the older child to counseling. He believed the children should attend school in his school district, and he expressed concern about the mother's anger as evidenced in her text messages. He wanted to focus on the children and provide them with stability. The father testified about child 1's inappropriate use of social media, which he was keeping tabs on. He expressed concerns about the children living with the mother during the school year based on the mother's anger issues. He admitted that he had blocked the mother from sending him text messages at times. And he admitted that he had unilaterally decided to switch the children's schools without seeking approval from the mother.

On July 24, 2019, the court entered an order ruling on the pending motions. The court indicated that it had reviewed the prior hearing and made the following findings:

1. The minor children have been residing in Louisville with their father for over three years.

2. The children have expressed a desire to live with their mother.

3. Court takes Judicial Notice of 16-J-1024-001, 002, 003 and 16-J-1025-001, 002, 003.

4. Due to the [mother] residing in Kenton County and [the father] residing in Jefferson County, the parties are unable to exercise shared parenting with the minor children.

5. [The mother] made allegations that the children suffered numerous vaginal infections. [The mother] alleged the infections were a result of [the father] not ensuring the children were receiving proper hygiene. There were no medical records produced to substantiate any of these allegations.

6. [The mother] alleged [the father] was physically abusing the minor children. There were no records introduced to substantiate these allegations. The Cabinet for Health and Family Services has taken no action in Kenton County nor Jefferson County as it relates to these allegations.

7. The children spend the majority of the summer with [the mother.]

8. It is in the children's best interest to continue to attend school in [the father's] school district.

9. [The mother shall] complete a mental health assessment as previously Ordered by this Court.

The court made the order final and appealable, and this appeal now follows.

On appeal, the mother argues that the family court erred in not permitting the children to testify, in not permitting the children's testimony to be taken by avowal, in not permitting the children to return to the mother, and in considering improper evidence from prior to November 21, 2017. The father did not choose to file a brief, although the GAL filed a brief on behalf of the children urging this Court to uphold the family court's decisions regarding the children's testimony. The GAL did not address the merits of the court's ultimate ruling that the children were to stay with the father for the school year.

For her first argument, the mother contends that the family court erred in failing to permit the children to testify at the hearing, even with protections in place. The father, below, and the GAL argued that the children should not have to testify because they had previously testified before the court.

In general, "[e]very person is competent to be a witness except as otherwise provided in these rules or by statute." Kentucky Rules of Evidence (KRE) 601(a). KRE 601(b) provides that "[a] person is disqualified to testify as a witness if the trial court determines that he:"

> (1) Lacked the capacity to perceive accurately the matters about which he proposes to testify;
>
> (2) Lacks the capacity to recollect facts;
>
> (3) Lacks the capacity to express himself so as to be understood, either directly or through an interpreter; or

(4) Lacks the capacity to understand the obligation of a witness to tell the truth.

KRE 611(a), in turn, provides the court with the discretion to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence" in order to:

(1) Make the interrogation and presentation effective for the ascertainment of the truth;

(2) Avoid needless consumption of time; and

(3) Protect witnesses from harassment or undue embarrassment.

In support of her position, the mother relies upon this Court's opinion in *Coleman v. Coleman*, 323 S.W.3d 770, 772 (Ky. App. 2010), *overruled by Addison v. Addison*, 463 S.W.3d 755 (Ky. 2015), in which we held "that it was error to exclude the child's testimony without a preliminary examination by the trial judge to determine her competency[.]" Because a competency hearing was not requested or held, the mother asserts that the family court committed reversible error. However, the GAL points out that the Supreme Court of Kentucky overruled *Coleman* in *Addison v. Addison*, 463 S.W.3d 755 (Ky. 2015), and extensively addressed this issue:

Lydia explains that before trial she requested that S.A. and M.A. be allowed to testify as to their wishes regarding their custodian and parenting time. The trial court declined to interview the children in chambers. Lydia does not dispute that a decision to interview the

-19-

children *in camera* pursuant to KRS 403.290(1) lies within the trial court's sound discretion, but argues that neither KRE 611 nor KRS 403.290(1) can be interpreted to exclude a child when called as a witness by a party in a custody proceeding. The Court of Appeals agreed.

The Court of Appeals explained that "while KRS 611 gives the court the discretion to 'protect' the witnesses from undue harassment or embarrassment, it does not afford the court the discretion to unilaterally exclude the testimony of the only other two witnesses to the events at issue when they were not found to be incompetent to testify."

The Court of Appeals relied upon its earlier decision in *Coleman v. Coleman*, 323 S.W.3d 770 (Ky. App. 2010). In *Coleman*, the mother asked to call her ten-year-old daughter to testify at a hearing on a change of custody motion. The trial court denied the request, based upon its concerns about the child's age, the pressure of testifying and putting the child in a position of having to choose between her parents. The trial court also denied the mother's request to permit the child's testimony by avowal or to conduct an interview in chambers. *Coleman* found no abuse of discretion in the trial court's refusal to interview the child in chambers, because the language of KRS 403.290(1) is discretionary; however, the Court concluded that it was error for the trial court to exclude the child's testimony without first having determined her competency:

> *Leahman v. Broughton*, 196 Ky. 146, 244 S.W. 403 (1922) . . . . makes clear that anyone may testify as long as they are deemed to be competent. However, under KRE 611(a)(3), the trial court retains discretion to 'exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to

. . . [p]rotect witnesses from harassment or
undue embarrassment.' KRE 611(a)(3).

. . . .

[I]t was error to exclude the child's
testimony without a preliminary
examination by the trial judge to determine
her competency . . . under KRE 601 . . . .

*Id*., at 772.

We disagree. *Leahman* did not involve child
custody or parenting time. *Leahman* involved an action
for an alleged wrongful forcible assault made upon the
child's mother. The mother had testified that her then-
five-year-old daughter was present at the time and saw
what occurred. At the time of trial, the child was eight
years old. She was examined by the court out of the
jury's presence and substantially corroborated her
mother's version of the facts which was in conflict with
the defendant's; however, the child's testimony was
excluded because the trial court determined that she was
incompetent due to her age. The former Court of
Appeals concluded that the trial court erred in excluding
the child's testimony which was reasonably intelligent
for her age.

The reason given for the disposition of the
courts in modern times to widen the rule
relating to the competency of witnesses,
including infants . . . is that the essential
thing in the conduct of litigation is for the
tribunal to have before it the facts of the
case, and that as few obstructions should be
thrown in the way of obtaining them as
possible, leaving it to the jury or other
tribunal passing upon the facts to protect the
interest of the opposing litigant by giving
such credence to the offered testimony, even

-21-

to rejecting it entirely, as the circumstances
show it deserves.

*Id*., at 405.

The trial court had the facts of this case before it.
As Kevin explains, "the testimony of the children would
offer nothing to the [trial] Court in determining the
children's best interest.  The [trial] Court had the benefit
of countless hours of interviews of the children by the
GAL and the two psychologists."  Lydia notes the
protections of KRE 611(a)(3) and that the General
Assembly took measures to protect children by providing
a specific mechanism for the trial court to ascertain the
child's wishes in KRS 403.290(1).  That is true.  The
General Assembly wisely left the decision to interview a
child in chambers to the sound discretion of the trial
court.  We also believe that the decision to permit a child
to testify in a proceeding involving custody or visitation
should be left to the sound discretion of the trial court.
To hold otherwise would render the protection afforded
by KRS 403.290(1) meaningless.  "The elementary
principles of humanitarianism are so strongly against the
placing of a child between its parents that we feel a trial
court should have a wide latitude in protecting the child."
*Parker v. Parker*, 467 S.W.2d 595, 597 (Ky. 1971).

As the Court of Appeals eloquently stated in *C.T.
v. F.T.*, No. 2007-CA-001452-ME, 2008 WL 5215939, at
5 (Ky. App. 2008):

[W]e do not condemn but rather applaud the
court for using its discretion to disallow
testimony from two young children who
were clearly traumatized by the enduring
drama of their parents['] divorce.
Furthermore, it appears that the GAL
adequately advocated for his clients' best
interests without subjecting them to yet
another "expert" interview that is not

-22-

> required by law. The GAL and the court had the benefit of numerous opinions from experts as well as other witnesses to form their assessment of a then eight-year-old boy and five-year-old girl. Their young age and the pressure applied by Mother severely diminish, if not completely obscure, the value of their opinions or testimony. The continued pursuit by Mother to put her children directly in the "line of fire," only further proves the soundness of the family court's judgments.
>
> To the extent that *Coleman* holds that a trial court must permit a child to testify in a proceeding involving custody or visitation, unless that child is incompetent to testify, *Coleman* is overruled.

*Addison*, 463 S.W.3d at 763-64 (footnote omitted).

Here, the family court excluded the children's testimony after hearing argument from counsel but failed to make any findings to support its ruling during the hearing. Nor did the court make any written findings or even address this ruling at all in the July 24, 2019, order as the mother had requested. Therefore, we must hold that the court abused its discretion in its decision to exclude the children from testifying at the hearing. It is clear that the mother's ability to present her case was hampered based upon the amount of objections by the father that were sustained on the grounds of hearsay. The information the mother sought to elicit could have been introduced through the children's testimony without any issues

with hearsay. Therefore, we must vacate the family court's July 24, 2019, order and remand the matter for further proceedings.

We are equally concerned about the substance of the July 24, 2019, order for several reasons. The family court took judicial notice of the 2016 juvenile actions, which predated the November 21, 2017, cutoff date from which the parties were permitted to introduce evidence. The court apparently held the mother accountable for failing to file medical records (although the record does contain medical records) and for failing to file a DNA action related to her allegations of abuse by the father. The court found it was in the children's best interest to continue to attend school in the father's district but did not include any factual findings to support this. Finally, the court ordered the mother to complete a mental health assessment "as previously" ordered, despite the fact that she had done so and her examining psychologist testified at the hearing about this examination and his conclusions. The order is devoid of the necessary factual findings to support the family court's ultimate decision that the children were to remain with the father for the school year after the mother appeared to have met the two pre-conditions to have the children returned to her for the school year.

For the foregoing reasons, the July 24, 2019, order of the Kenton Family Court is vacated, and this matter is remanded for further proceedings in accordance with this opinion.[5]

COMBS, JUDGE, CONCURS.

THOMPSON, K., JUDGE, CONCURS AND FILES SEPARATE OPINION.

THOMPSON, K., JUDGE, CONCURRING: While I agree that it is appropriate to vacate and remand for an order which remedies the problems the majority opinion has identified, namely the lack of sufficient factual findings and inconsistencies regarding what evidence was to be considered, I write separately to clarify how the family court should proceed regarding the children's potential testimony on remand.

The mother relied on *Coleman v. Coleman*, 323 S.W.3d 770 (Ky.App. 2010), to justify her position that the children either needed to be interviewed in chambers or testify by avowal, and declined to address *Addison v. Addison*, 463 S.W.3d 755 (Ky. 2015), in her appellate reply brief even after the GAL's appellate brief pointed out that *Addison* overruled *Coleman*.

---

[5] We are aware that the family court judge who presided over the hearings at issue and entered the order on appeal is no longer on the bench.

While the majority opinion extensively quotes from *Addison*, and explained how it overruled *Coleman*, very little of the opinion is devoted to analyzing how it and other case law it built upon applies to the factual situation before us, when it would be appropriate for a family court to exercise its discretion to decline to permit calling children to the stand or interviewing them in chambers, and what factual findings would be sufficient to uphold such an exercise of discretion.

Prior to *Addison*, it was well established that it is discretionary whether the trial court interviews children in chambers in a custody, timesharing, or visitation dispute. *See Brown v. Brown*, 510 S.W.2d 14, 16 (Ky. 1974); *Miller v. Harris*, 320 S.W.3d 138, 143-44 (Ky.App. 2010).

In *Chappell v. Chappell*, 312 S.W.3d 364, 365 (Ky.App. 2010), the Court upheld a trial court's decision not to interview the children as an appropriate exercise in discretion, explaining as follows:

> The separation and divorce were particularly acrimonious, and although the children were not of tender years, the trial court was seriously concerned about the potentially lasting effects resulting from an in-chambers interview. Although the children were available and could have been called to testify, both of the attorneys of record declined to summon them to the witness stand—presumably electing to spare them a possibly traumatic experience in eliciting testimony that had already been presented from other sources. After reviewing "an abundance of other evidence introduced about the children and their relationships," the court

made a carefully deliberated decision "not to further bring the children into the middle of this dispute."

Therefore, a suitable reason for declining to interview the children in-chambers was that the trauma it would cause the children was not in their best interest given that their testimony was not needed given the availability of other evidence.

In *Coleman*, 323 S.W.3d at 771, the trial court refused to require a ten-year-old to testify in her parents' divorce case, citing concerns about her age, "the pressure that testifying would put on her[,]" and "putting a child of that age in the position of having to choose between her parents[]"; the trial court also refused to either allow the child's testimony to be taken by avowal or to interview the child in chambers. In reversing, the Court of Appeals applied the reasoning from an assault case, *Leahman v. Broughton*, 196 Ky. 146, 244 S.W. 403, 403-05 (1922), in which a child was permitted to testify as an eye witness, in holding "it was error to exclude the child's testimony without a preliminary examination by the trial judge to determine her competency[,]" but it noted that Kentucky Rule of Evidence (KRE) 611(a)(3) was available "to protect the child from harassment or embarrassment." *Coleman*, 323 S.W.3d at 772. This established a system in which if children were called to the stand by their parents in a divorce case, they had to testify if competent, whereas it was discretionary as to whether the trial court would interview them in chambers.

-27-

*Addison* was a divorce case in which a mother requested that her children be allowed to testify about their wishes for custody and timesharing. The trial court declined to allow them to be interviewed in chambers. On appeal the mother did not dispute that the trial court had the discretion to decline to interview the children *in camera* pursuant to KRS 403.290(1) but argued "neither KRE 611 nor KRS 403.290(1) can be interpreted to exclude a child when called as a witness by a party in a custody proceeding." *Addison*, 463 S.W.3d at 763. The Court of Appeals agreed, relying on *Coleman*. The Kentucky Supreme Court disagreed, holding that "the decision to permit a child to testify in a proceeding involving custody or visitation should be left to the sound discretion of the trial court." *Addison*, 463 S.W.3d at 764.

As indicated in *Addison*, the family court "should have wide latitude in protecting the child[]" from being subjected to being forced to testify by a parent seeking to "put her children directly in the 'line of fire[.]'" *Id.* at 764 (quoting *Parker v. Parker*, 467 S.W.2d 595, 597 (Ky. 1971) and *C.T. v. F.T.*, No. 2007-CA-001452-ME, 2008 WL 5215939, at *5 (Ky.App. Dec. 12, 2008) (unpublished)). Similar concerns supported the exclusion of the children from being interviewed in chambers in *Chappell*.

The majority opinion fails to address the mother's argument that she should have been permitted to take the children's testimony by avowal. This

leaves uncertainty. I would unequivocally state that a request to take the children's testimony by avowal after the family court makes a ruling that it is in the children's best interest not to testify is properly prohibited. Just as the Court in *Addison* indicated "the decision to permit a child to testify in a proceeding involving custody or visitation should be left to the sound discretion of the trial court" because "[t]o hold otherwise would render the protection afforded by KRS 403.290(1) meaningless[,] *Addison*, 463 S.W.3d at 764, I believe that requiring children to testify through avowal also renders the protection afforded by KRS 403.290(1) meaningless, and such an action would subject the children to the very evils that the family court was likely trying to prevent. Additionally, the children's avowal testimony is unnecessary as the mother could proffer the substance of what the children would have testified to for review. *See Hall v. Smith*, 599 S.W.3d 451, 455 n.3 (Ky.App. 2020).

I recognize that sometimes it will be important for children to testify as to their wishes concerning custody, timesharing, and visitation. As explained in *May v. Harrison*, 559 S.W.3d 789, 790-91 (Ky. 2018), family courts are certainly authorized pursuant to KRS 403.290(1) to find out the basis for those wishes, including exploring allegations of sexual abuse. However, such a decision is best left to the discretion of the family court.

While the majority opinion is correct that factual findings should have been made as to why the family court would not permit the children to be called to the stand or interviewed in chambers, the family court enjoys wide discretion in this area. The majority opinion is focused on the mother's ability to present her case where she was stymied in testifying as to what the children said to her, and stating that "[t]he information the mother sought to elicit could have been introduced through the children's testimony without any issues in hearsay[,]" may lead the family court to erroneously assume that the majority seeks to require it to allow the children to testify on the stand, testify by avowal, or be interviewed in chambers.

This is of course not what is required under *Addison* or our existing case law. There are other avenues that the mother could have pursued to try to establish why she was the better choice to be primary residential custodian. The mother was not entitled to the children's testimony. The mother, in failing to try to obtain other sources of information besides the children's testimony or her recitation of what she claimed they had told her, failed to act in a prudent manner. I agree with the family court that if the children had suffered from and been treated for numerous infections, there should have been medical records which could have been introduced to substantiate such a claim. Had such records been introduced, the family court may have been more willing to interview the children.

The family court appears to have made a credibility determination against the mother, which it was entitled to do so in coming to its ultimate decision about where the children should reside. Even had the children testified on the stand or been interviewed in chambers, the family court would have been entitled to make credibility determinations against their testimony. Further, even if the family court believed what the children related, it would have been within its discretion to determine, based on all of the evidence and pursuant to KRS 403.270, that it was in their best interest to continue living with their father.

It is my belief that, considering the facts in this case, a simple statement from the family court that the children testifying or being interviewed in chambers would not be in their best interest and explaining why this was the court's belief would have sufficed to uphold its decision as to this issue.

Accordingly, I concur.

BRIEFS FOR APPELLANT:

Carol L. Risk
Covington, Kentucky

BRIEF FOR GUARDIAN AD LITEM:

Howard L. Tankersley
Covington, Kentucky